Peakson, J.
 

 The Hon. Jesse Speight and the plaintiff, Louisa, both native citizens, intermarried in this State, in 1827; and continued to reside here until 1837, when they removed to the State of Mississippi. Speight died intes. tate in 1847, since which time the plaintiff, Louisa, has continued to reside in that State, and afterwards intermarried with the other plaintiff.
 

 In 1826, Mrs. May, a citizen of this State, died intes
 
 *132
 
 tate, leaving the defendant, Louisa, a daughter, and one of her next of kin. John May took out letters of administration in the county of Pitt, and soon afterwards delivered to the next of kin, residing here, several slaves of the estate of his intestate, for the purpose of partition. A petition was filed, to which Speight and wife were made defendants; and such proceedings were had. that in the Spring of 1847, a division was made, and the slave sued for was allotted to
 
 Speight, and wife,
 
 and he being in this State, at the time of the division, took the slave into his possession, and made arrangements to have him sent to the State of Mississippi, to which State he returned, and soon afterwards died. In consequence of his death, the slave was not taken' from this State. Letters of administration on the estate of Speight were granted to the defendant, by the County Court of Pitt; and he took the slave into possession, as of the estate of his intestate.
 

 In 1839, a Statute was passed in the State of Mississip-’ pi, which provides : “ Hereafter, when any woman, possessed of a property in slaves, shall marry, her property in such slaves, and their natural increase, shall continue to her, notwithstanding her coverture, and she shall have and possess the same, as her separate property, exempt from any liability for the debts or contracts of her husband.— And when any woman,
 
 during coverture,
 
 shall become possessed of slaves, by conveyance, gift, inheritance, distribution, or otherwise, such slaves, and their increase, shall enure and belong to the wife, in like manner as is above provided, as to the slaves which she may possess at the time of her marriage.”
 

 In 1846, this Statute vms amended, by securing to the wife, “the proceeds of the labor of such slaves.”
 

 The bill alleges, that, under this Statute, the plaintiff, Louisa, was entitled to the slave ; and it is insisted, that
 
 *133
 
 the effect of the division, and of the act of Speight, in taking the slave into possession, was to vest the
 
 legal title
 
 in him, in trust for her. The prayer is, that the defendant be declared a trustee, and be required to deliver the slave to the plaintiffs, and account for hire.
 

 The defendant alleges, that Speight was indebted to him, and also to Patsy May, who are citizens of this State, in large sums: which debts were of long standing; that Speight was insolvent; that his debts in Missisippi much exceed the value of his property there : and if the value of the slave is appropriated to the payment of the debt due to him and Patsy May. they. will, nevertheless, lose the greater part of their debts, as the property of Speight in this State, besides the slave, does not exceed $200.
 

 General Speight and his wife had abandoned their '‘matrimonial domicil” and acquired an “actual domicil” in Mississippi: and the Statute of that State was passed several years prior to the time, when his wife acquired this slave. By the law of
 
 this State,
 
 the slave became the property of the husband, when he reduced it into possession. By the law of
 
 Mississippi,
 
 he had no such marital right, and the slave “ inured and belonged to the wife, as her separate property, exempt from any liability for his debts” — which law is to govern the case ?
 

 !‘ When there is a change of domicil,, the law of the ac-
 
 tudl domicil,
 
 and of the matrimonial domicil, will govern as •to all future acquisitions of* moveable property: and as to all immoveable property, the law
 
 rei sitce.
 

 Story’s conflict of Laws.
 
 See 187.
 

 This is the conclusion of Judge Story, after a full and learned discussion of the authoi’ities and the reasoning.
 
 We
 
 concur in it. And, unless there be some peculiar circumstance, to take this case out of the operation Of that conclusion, -the plaintiffs an entitled to a decree.
 

 
 *134
 
 Moveable property attends the person, and is, therefore, called “personal” (as distinguished from fixed or real property :) and the general principle is, that no matter where it may happen to be, it is subject to the law oí the domicib and although it be in a foreign country, it is governed by the same rules and laws of transfer and succession, as if the owner had it in possession
 
 at home.
 
 This is the principle, from which the learned commentator derives the above conclusion.
 

 This exception to the genei'al principle is admitted. If a citizen of another country dies, indebted to citizens of this country, and owns personal property here, we appropriate it to the payment of his creditors, in the order required by
 
 our law,
 
 and not that of his domicil. But the surplus will be disposed of, according to the law of his domicil. And, if, by that law, the widow of an intestate be entitled to his whole estate, she will receive such surplus, although he left him surviving, mother and sisters, or
 
 children,
 
 citizens of this State. The distinction is this : our citizens, as
 
 creditors,
 
 have
 
 rights,
 
 which we are bound to protect. We will not sacrifice justice to comity. But as
 
 kinsmen,
 
 they have
 
 no rights.
 
 Consequently, it depends
 
 not on
 
 the laws of this country, but on the laws of
 
 Ms country,
 
 how his property shall be disposed of: and, although it happens to be in our State, by the comity of nations, it is considered the same as if he had it at home.
 

 , Our case does not come under this instance : but, we think, it does come under the principle of this exception.
 

 By the laws of this State, a man, before marriage, may make a settlement on his wife, (with certain restrictions in favor of creditors:). but after marriage, any settlement pr relinquishment of his marital rights, in property which she might thereafter, require, would be deemed fraudulent and void, as to creditors : and if he proved to be insolvent, the
 
 *135
 
 property, to which, but for the relinquishment,- he would-have been entitled, will be taken from her and applied in’ satisfaction of the debts. If, therefore, General Speight had in 1839 executed a deed relinquishing his marital rights or conveying to a trustee for the separate use of his wife, all the slaves, which she might thereafter acquire by
 
 “
 
 conveyance, gift, inheritance, distribution, or otherwise,” such deed would have been deemed fraudulent and_ void, as to creditors. And this slave, when it came to the question,' who shall suffer loss ? would be taken from her, rather than permit honest creditors to be unpaid.
 
 Allen
 
 v.
 
 Allen 6
 
 Ired. Eq. 293.
 

 General Speight did not execute such' a deed. But, in < 1839, his adopted State made a statute, which has precise-" ]y the same effect. Can that be done indirectly for him, which he could not do directly ? Is there any principle in the comity of nations, by which +his State is called upon to stand by, and see her citizens deprived of the right to collect their debts, out of property, within her jurisdiction, by an act, which, if done by the debtor, would be deemed fraudulent and void ? Nay more, by which she is called upon to set aside her own laws, for the purpose of ■•■irry-ing into operation, a Statute of another State, having this effect? We think not. And we challenge the production of any authority, or any fair reasoning, by which such a principle can be established. This is a “ conflict of law,” and we must be governed by our own law.
 
 Oliver
 
 v.
 
 Townes,
 
 14 Martin Rep. 97. A ship was sold in Virginia: the ship at the time of the sale, was in New Orleans : be-fo e delivery, she was attached by a creditor of the vendor: by the law of Virginia, no delivery was necessary to give effect to the sale : by the law of Louisiana, it was necessary. In this conflict of law, the Court of Louisiana decided
 
 *136
 
 according to the law of that State, and gave judgment for the attaching creditor.
 

 This case is not as strong as the one under our consideration ; and the circumstances did not as clearly bring it within the admitted exception to the general principle; but the reasoning of the learned Judge, who delivered the opinion, fortifies our conclusion, and it is evident, that Court would not have hesitated an instant in deciding the case as we do.
 
 Lanfear
 
 v Sumner, 11 Mass. Rep. 110,
 
 Thurst
 
 v
 
 Jenkins,
 
 7 Martin, 318, tend to the same conclusion.
 

 We have no right to object to the policy of the law of the State of Mississippi; and we feel bound by the comity of nations, to carry it into operation, in all cases, except when, as in the present case, a citizen of our State removed and died ' insolvent and indebted to other citizens of our State , or when, hereafter, a citizen shall remove, and is so indebted at the time of his removal.
 

 Per Curiam. / The bill dismissed with costs.