The Court took an aclmsa/ri, and now the opinion of the Court is delivered by
 

 Pearson, J.
 

 One domiciled in Canada dies intestate and without issue, leaving property in this State; the brother of the intestate receives the property from the administrator appointed here; is he liable for the tax imposed by our statute'^ The act provides, sec. 1st, “A tax of one per centum shall be levied and collected upon the value of all real estate descended or devised to collateral kin. Sec 2nd, A tax of one per cent shall be levied and collected upon the value of all personal
 
 *52
 
 property or goods bequeathed to strangers or collateral kindred, or which shall be distributed to, or amongst the next of kin, of any intestate when such next of kin, are collateral relations of such intestate.” I will venture the assumption, that the first impression made, by these words, upon any one is, that it was the intention of the Legislature to impose a tax on all real and personal estate,
 
 situate m this State,
 
 which, upon the death of the ower, passes to strangers or collateral kindred! The object of taxation is to support the government by which laws are made for the protection of persons and property. Of course, the persons and property protected, ought to pay the expenses of the government. It is seen at once, that the persons who live in this State and the persons and property, protected by our laws, are consequently, the legitimate subjects of taxation. 4
 

 The impression, that it was the intention of the Legislature to impose a tax upon all real and personal estate,
 
 siUoate m this State,
 
 which upon the death of the owner passes to strangers or collateral kindred, is aided by the consideration that, in regard to property situate here, we have the means of enforcing the payment of the tax, whereas, property situate out of the State, is beyond our reach ; and there is this further consideration : if the property of one of our own citizens, which is situate here, and passes to strangers or his collateral kindred, is subject to a taxbecauseof the protection it receives under our laws, why should not the property of one who has his domicil abroad, but whose property is situate here, is protected here and is administered here, and passes by force of our laws, be subjected to a like'tax?
 

 When the question was first opened, these views made so strong an impression upon my mind in favor of construing the statute so as to include all property situate in this State, that, I confess, I imagined little could be said in favo* of any other construction; but the very elaborate argument of Mr.
 
 Moore,
 
 showed that much could be said on the other side; that the Courts in England, after half a dozen conflicting decisions, the first establishing the construction by which to include all property situate in England, ha” e finally, in the case of
 
 Thom
 
 
 *53
 

 son
 
 v.
 
 the Lord
 
 Advocate, 12 Clark, and Finnelly p. 1, by a solemn decision of the House of Lords, overruling the decision of the Courts of Scotland, and all of the English cases by which the Statute was made to include all property situate in England, settled upon the construction, that although in regard to real estate and legacies charged on real estate, the
 
 situs
 
 of the property is to govern, yet, in regard to personal property, the
 
 domicil
 
 of the owner, at the time of his death, is to govern ; so as to exclude property of one domiciled abroad, and to include personal estate of one domiciled in England, even ex-teAding to property in the funds of Russia, France, Austria and America.
 
 In re Erwin
 
 1, Cr. and Jerv. 151; 1 Tyr. 92. The conflict among the English cases, and the fact- that the latest cases adopt the principle of construing the statute, so far as it concerns personal estate with reference to the domicil of the owner, to the exclusion of the principle of construing the statute, both as regards personal or real estate with reference to the
 
 situs of
 
 the property, induced this Court to take an
 
 ad-visari:
 
 the question being a very grave one.
 

 After devoting to the question much consideration, we are satisfied that the true principle, both in regard to personal and real estate, is the
 
 situs
 
 of the property: and that the principle by which a distinction is made between personal and real estate, so that in regal’d to the former, a construction depending upon the domicil of the owner is adopted, is based upon a fiction, which has no application to
 
 “
 
 questions of revenue.”— The construction which adopts the
 
 situs
 
 of the property is first suggested to the mind, and is yielded to at once, because it is based upon a fact; the property is here, it is protected and passes by force of our laws. The construction which adopts the domicil does not suggest itself, and the mind will not entertain it, except after a long argumentation and much ingenious and refined reasoning; because it is based upon a fiction. This makes it necessary to inquire, to what extent the original object for adopting the fiction, will justify its being carried ?
 

 In the case of Thomson, cited above, Lord Campbell evidently yields his first impression in fatfor of the principle of
 
 *54
 
 the
 
 situs
 
 of the property, with some hesitancy, and feels called upon to use these very striking words: “At the same time my Lords, Ibelievethatif the Chancellor of the Exchequer, who introduced this hill into Parliament, had keen asked his opinion, he would have been a good deal surprised to hear that he was not to have his legacy duty on such a fund as this, where the testator was a British born subject, andhadbeen domiciled in Great Britain, and had merely acquired a foreign domicil, and. liad left property that actually was in England, or in Scotland at the time of his decease. The truth is, my Lords, that the doctrine of domicil has sprung up in this country very recently, and that neither the Legislature nor the Judges, until within a few years, thought much of it; but it is a very convenient doctrine j it is now well understood, and I think that it solves the difficulty with which this case was surrounded.— The doctrine of domicil was certainly not at all regarded in the case of the
 
 Attorney General
 
 v. Cockerell, nor in that of
 
 the Attorney General
 
 v.
 
 Beatson.
 
 If it had been the criterion at that time, there would have been no difficulty at all in determining this question; but now, my Lords, when we do understand this doctrine better than it was understood formerly, I think that it gives a clew which will help us to a right solution of this question.” This doctrine of domicil which neither “ the Legislature nor the Judges, until within very a few years, thought much of,” and is a very convenient doctrine, and is now well understood, was it seems, first advanced and adopted
 
 in Re Erwin,
 
 where one domiciled in England, had funds in Russia, France, Austria and America, and the domicil being adopted as the basis of the construction of the statute, in that case, where the revenue was much increased by it, the same principle was of course carried out
 
 in Re.
 
 Bruce, and in
 
 Thomson
 
 v.
 
 the Lord
 
 Advocate, where the revenue was diminished. But in all the cases, the question is treated as one affecting the public revenue. It is a probable supposition that in England, for every dollar having its
 
 situs
 
 there, but owned by one domiciled abroad, there are one hundred dollars having its
 
 si-tus
 
 abroad, but owned by one having his domicil there; so, on the score of revenue alone, the consideration for adopting the
 
 *55
 
 principle of the
 
 domicil,
 
 rather than that of the
 
 situs
 
 of the property, was one hundred to one. In this State, such is not the case. There is no great difference between the amount of property here owned by persons doihiciled abroad and the amount of property out of the State owned by persons domiciled here; so, upon the score of revenue, the consideration is equal on both sides, and the question is left open, and is to be decided upon principles of law and reason, applicable to the construction of statutes unaffected by the course of decisions in England, except so far as they involve principles of law, and are sustained by the reason of the thing. No one can read the opinion delivered before the Lords in the case of
 
 Thomson
 
 v.
 
 the Lord Advocate,
 
 which is the case in which the principle- of the domicil is finally settled, without being struck with the fact that there is throughout, a marked paucity of reasoning. The amount of it i^this: the very general words of the statute, “ every legacy given by any will or testamentary instrument of any, person,”„must of necessity’receive
 
 some
 
 limitation in their application, for they cannot in reason extend to every person every where. The principle of domicil which is a well-known and fixed principle in reference to the distribution of the personal estate of deceased persons offers a very convenient general rule by which to put a limitation upon the generality of the words: therefore, it ought to be adopted as the rule of construction. It is true, the words are very general and there must be some limitation, for they are broad enough to include not only “ every person every where,” but “every thing every where,” and they must be limited either by reference to the
 
 situs
 
 of the property, or the
 
 domicil
 
 of the deceased; but no reason is given, except that of convenience in its bearing upon the question of the public revenue, why the latter should be adopted and the former excluded; whereas for the reason stated above, it seems to us the former is the most obvious, natural, and proper principle by which to limit the generality of the words.
 

 The principle of the dotwidl, which is based on the fiction that personal property attends the person, and is to be considered as being where the owner has his domicil, is adopted by
 
 *56
 
 the comity of nations in reference to the distribution of the personal estate of deceased persons; but it has no application where the rights of creditors are concerned. Story’s conflict of laws 354;
 
 Moye
 
 v.
 
 May,
 
 8 Ire. Eq. 131. It has no application to the property of living persons; and ha fact “ the Action” was only acted upon, in the single instance above stated, until its new application in England to a question of revenue, where it is not pretended that it is called for by the comity of nations, which is the admitted ground on which its application to cases of distribution is based. So we have a new application of a fiction without the ground upon which its former very restricted application is based. The argument stands thus ; when creditors are concerned, we will not adopt the fiction, although it is called for by tire comity of nations; in regard to the disposition of the surplus, after paying debts, we yield to the comity of nations, because no one having a
 
 legal
 
 right, is concerned in the question ; but in regard to a question of revenue, although if the application of the fiction was called for by the comity of nations, we are justified in not yielding to it, because the sovereign would be considered as a creditor, we will adopt the fiction, notwitstanding the comity of nations has no bearing upon it! It is therefore clear, that the application of the fiction to cases of revenue is not only new, but must be put on some ground entirely different from that on which it has so long been applied to cases of distribution; and the only new ground that can be suggested for this new application of the fiction, is, that it will increase the revenue, and be a convenient rale of construction, and is not forbid by comity. Suppose a tax is imposed upon all the horses of every person, will the words be restricted by the
 
 situs
 
 of the property, or by the
 
 domicil
 
 of the owner? Must a tax be paid for every horse in the State without reference to the domicil of the owner, or must a tax be paid for a horse in Canada because Ms owner
 
 limes here,
 
 and a horse
 
 here
 
 be exempt, because his owner lives in Canada? Suppose a tax is imposed upon all gifts of personal property by any person, and one domiciled in Canada make a gift of a horse in North Carolina, can it be that the tax would not be payable? and, that if one domiciled
 
 *57
 
 in North Carolina should mahe a gift of a horse in Canada, the tax must be paid ?
 

 But it is said, that the principle of the domicil is not applied to the property of living persons. That is true, and it is also true, that it has not heretofore been applied, except to the disposition of the surplus personal estate of deceased persons, and the reason is obvious. The notion upon which the principle of the
 
 clomioil
 
 is based, that personal property attends the person and is where the owner lives, is a mere fiction, and its very restricted application rests upon the comity of nations; but in collecting debts and taxes, we must proceed upon the
 
 fact,
 
 and and consider.the property as being where it actually is; in other words, the
 
 situs
 
 of the property must be the governing-principle.
 

 I have not referred to those portions of the opinion delivered in
 
 Thomson
 
 v.
 
 the Lord Advocate,
 
 which rests upon the mere words of the English statute so far as they seek to sustain the distinction betiveen the probate duty and the legacy duty: they are immaterial.
 

 So far as they seek to sustain the construction adopted by reference to the
 
 letter
 
 of the statute,they have no weight; for without saying there is any substantial difference between that statute and ours,
 
 the words used are entirely different.
 

 It is said that letters testamentary or letters of administration, granted by our Courts, where the deceased had his domi-cil abroad, are ancillary or secondary; that the property situated hero is not administered by
 
 our
 
 laws, but by the laws of the domicil, and that the statutes should be so construed as oidy to embrace such property as is administered by our laws. This argument would have much force if the position upon which it is based were true ; but it is not true to the extent required by the argument, and the learned counsel, although notified that the proposition was not assented to, was unable to produce any authority for it, and was forced to rely on the fact that such administrations are spoken of in the books, as ancillary or secondary in general terms : It is evident that these terms are used simply to express the idea that the usual course, in case of a will, is for the executor, in the first place, to offer it
 
 *58
 
 for probate, and to take letters testamentary in tlie country of tlie domicil, and
 
 then
 
 to offer it for probate and take letters testamentary in tlie country where the property is situate, and also, the further idea, that if a will be executed with the solemnities required in the country of the domicil, it will be held valid by our Courts, although not executed with the solemnities required in reference to the wills of parties domicil-eed here, and, that after the debts are paid, in tlie disposition of the surplus, our Courts from comity, adopt and act upon the laws of the country of the domicil, as
 
 ov/r la/w in reference to theparücula/r
 
 case, so as to hold those entitled'who would be entitled according to the law of the country of-the domicil; but all this is very far from reaching the proposition, that the property is not administered under
 
 thecmthority of ow Pourts,
 
 and by our law. It is clear, that the authority to act, the letters testamentary or of administration by which the property .is collected and reduced into possession, must be granted by our Courts. It is also clear, that the debts must be paid according to the priority established by the general law, and that in regard to the rights of creditors, we refuse to adopt, as a special law for the particular case, the law of tlie country of the domicil; and it is-also clear, that, in the payment of legacies, and the disposition of the surplus, our Courts consider those entitled, who are so, according to the law of the country of the domicil. So, the only question is, does this sustain the position that this surplus is not administered under the authority of our Courts, and by our laws ? Certainly it is axl-ministered under tlie authority of our Courts; and it is equally certain, that to all intents and purposes, it is administered by our laws. The idea that our Courts administer the laws of an-country, is a novel one; but the principle, that in particular cases, our Courts will adopt and act upon, as our law, the laws of another country, is a familiar one, and is well settled according to the comity of nations in reference to the disposition of the property of deceased persons, who have a foreign domi-cil ; upon the ground, that if one makes a will which he believes to be valid, because executed according to the laws of his country, it worxld be hard to disappoint his intentions by
 
 *59
 
 refusing to recognise it as valid in tlie country where Ms pro-property may happen to be at the time of his death. Or if one dies intestate, under the belief that his property will belong to certain of his kindred, because such is the law of his country, it would be hard to disappoint his expectations by enforcing the general law of the country where the property happens to be, instead of adopting for his special case, the law of his country. "When the English Courts adopted the law merchant, it could not be said they administered the law of the Romans. "When we adopted the law of England, we made it our law; so, when we adopt the law of a foreign country for special reasons applying to a particular case, it is our law.
 

 To test this question : if the person appointed executor qualifies in the country of the domicil, and then comes here and qualifies, collects the property, pays off the debts and the legacies out of the property which he gets here, the fact that he administers under our laws, may not be so strikingly obvious. But suppose he does not qualify here, and letters of administration with the will annexed are granted by our Courts to another person, can such administrator rightfully pay over the property to the executor and trust to him to pay the debts or legacies? He cannot; but is bound to pay to the extent of the assets, all creditors and legatees who apply within a reasonable time, no matter where they reside, and cannot relieve himself from liability to them by proof of his having handed over the assets to the executor, because being appointed by our Courts to administer, he is bound to do so; paying debts according to the general law, and legacies according to the special law adopted in reference to that particular case; and cannot excuse himself by saying that his appointment was ancillary or secondary. After paying debts and legacies, if there be no residuary legatees, he must pay the balance to the executor, provided he is entitled to it according to the law of the country of the domicil; but if he is not so entitled, the administrator must see to it, and pay to the persons who are entitled according to the law of the domicil, which is our law in reference to that particular case. In case of intestacy after paying the debts, an administrator appointed here, has no right
 
 *60
 
 to hand over the surplus to the administrator appointed in the country of the domicil, and trust to him to pay it over to the next of kin or person entitled to it according to the law of the domicil. Our Courts require the administrator to give a bond and security, and protect the rights of the persons so entitled, as rights existing and enforceable under our laws; and the administrator of the domicil has no right to demand the fund unless he is the person entitled to keep it, according to the laws of the domicil; Sto. conflict of laws 423, sec. 513;
 
 Hyman
 
 v.
 
 Gaskins,
 
 5 Ire. 267. These positions are all well settled, and prove, conclusively, that the position as contended for in the argument, is not true.
 

 As the property situated here, belonging to a foreigner, is, after his death, protected and administered by our laws, there is the same reason for enforcing a tax apon it, as upon the property of our own citizens, under similar circumstances, and the statute should be so construed as to include both.
 

 "We have considered the question without making any distinction between the case of a will and one of intestacy, .because our statute makes none, and puts both upon the same footing.
 

 But it is proper to remark, in reference to the case of
 
 Thomson
 
 v.
 
 the Lord Advocate,
 
 which was mainly relied on, thatis in the case of a will, and ours is one of intestacy, and a marked difference is made in the books between the two cases. An executor derives his authority and rights under the will, and they are recognized by the comity of nations beyond the jurisdiction of the Courts of the country of the domicil. But an administrator derives his authority and rights from the Court by which he is appointed, and they are necessarily confined to the limits of the jurisdiction of the Court under whose appointment he acts; this might in England furnish a ground for distinguishing a case of intestacy from that of a will; of course the decisions in reference to legacies cannot be a direct authority in a case of intestacy.
 

 It is also said that the next of kin in Canada might have come' here and collected the assets without administering, and therefore the statute does not apply, as the act of administer-
 
 *61
 
 ors of the intestate to pay without suit. The position upon ing was unnecessary, or only made so hy the refusal of debt-which this argument is based, is riot true; the next of kin whether residing in Canada or here, lias no rights except such as are derived from an administrator appointed here, and the debtor of the intestate could not rightfully pay either to the next of kin or even to an administrator appointed in Canada, and such payment would not protect him against the action of one afterwards appointed administrator here. So the appointment of an administrator by our Courts, was not only proper, but necessary.
 
 Stamps
 
 v.
 
 Moore,
 
 decided at this term, 2 Jones’ Rep. 80.
 

 In the case of
 
 lona notaKUa,
 
 where the comity of nations is not concerned, the English Courts do not act on the fiction that the property attends the person, for the fact of its being situate in more than one diocese ousts the jurisdiction of the ordinary, and vests it in the metropolitan. The administrator here proceeds in the same manner as if the domicil was here, to administer the assets by paying debts and disposing of the residue ; with respect to debts, he is governed by the general law; in disposing of the residue, lie is to pay it to the person entitled; and the only difference is, that in ascertaining who are entitled, he is governed, not by the general law, but, by a special law which holds those persons to be entitled who would be entitled according to the law of the country of the domicil, if the property was situate there.
 

 There is another view of the subject, which is equally conclusive in favor of fixing the construction by reference to the
 
 situs
 
 of the property. One dies domiciled in England leaving a will, the executor qualifies there and exhausts the assets there in the payment of debts; an administrator with the will annexed is appointed here, collects the assets that are here and exhausts them in the payment of legacies as he is bound to do, how can theCourts of England enforce the payment of the legacy duty ? The executor is not bound, for he had no right to demand or receive the assets here, which were duly administered by one who is not within reach of the English Courts-; and yet, such is the result of the construction by which it ig
 
 *62
 
 lield that that property here, is liable for the legacy duty, because the domicil was there, and
 
 e converso,
 
 that the property there is not liable when the domicil is here. The exception to the commissioners report overruled.
 

 Decree.