## J. LILLY JONES v. J. S. LAYNE.

### (Filed 14 May, 1907).

**Husband and Wife—Domicile of Wife—Year's Support—Where Laid Off.**—The year's provision to the widow was unknown to the common law. The intent of the statute is to provide for her and her young children in preference to taxes and debts, and the fiction of the husband's personal property belonging to his domicile applies only in the distribution of assets. Under Revisal, sec. 3098, upon failure of the personal representative to act, and on application to a justice of the peace, the year's support should be laid off to the widow, a *bona fide* resident, from a fund in this State due her husband, who died domiciled in another State, where letters of administration had been granted.

WALKER, J., dissenting.

CIVIL ACTION, tried before *Ward, J.,* and a jury, at August Term, 1906, of the Superior Court of SURRY County. At the conclusion of the evidence the Court sustained a motion as of nonsuit. Plaintiff appealed.

*J. M. Bodenheimer* for plaintiff.
No counsel *contra.*

CLARK, C. J.  The plaintiff and her husband lived in this State at the time of their marriage.  They removed to Kentucky.  After awhile they separated, she returning to this State, her husband going on to the State of Washington, where he died.  There being no administration here, upon her application to a justice of the peace, under Revisal, sec. 3098, year's provision was laid off to her to the amount of a fund or debt due her husband ($51.42) by the defendant. This action to recover said amount of the defendant, by virtue of the allotment, was begun before a justice of the peace.

Year's provision was unknown to common law, and is intended by our statute as an emergency provision for the widow and young children who might otherwise suffer or be liable to be thrown upon the county for support.  It is to be taken out of the personal property in priority not only to debts of the deceased, but in preference to costs of administration.  It is to be promptly allotted, by the personal representative, if there is one, but if there is not, or if he fails or delays to allot, the widow can apply to a justice of the peace.  Revisal, sec. 3098.

Dower is allotted under the law obtaining here, though the husband may be domiciled elsewhere.  As to the personalty of the deceased, it may be controlled by the statute here if the Legislature so direct, but, in the absence of such legislative direction, by comity it will be paid over by the personal representative to the personal representative in the State of domicile, first subject, however, to payment of debts due here and the legacies.  In a remarkable and able discussion, *Judge Pearson*, in *Alvany v. Powell*, 55 N. C., says (p. 53): "After devoting to the question much consideration, we are satisfied that the true principle, both in regard to personal and real estate, is the *situs* of the property, and that the principle by which a distinction is made between personal and real estate, so that in regard to the

former a construction depending upon the domicile of the owner is adopted, is based upon a fiction which has no application to 'questions of finance' "—holding, therefore, that our inheritance tax applies—and adds: "The construction which adopts the *situs* of the property is first suggested to the mind and is yielded to at once, because it is based upon a fact; the property is here, it is protected, and passes by force of our laws. The construction which adopts the domicile does not suggest itself, and the mind will not entertain it except after a long argumentation and much ingenious and refined reasoning, because it is based upon a fiction. This makes it necessary to inquire to what extent the original object for adopting the fiction will justify its being carried." And, on page 55, that learned Judge further says: "The principle of domicile, which is based on the fiction that personal property attends the person, and is to be considered as being where the owner has his domicile, is adopted by the comity of nations *in reference to the distribution of the personal estate* of deceased persons; but it has no application where the rights of creditors are concerned. Story Confl. Laws, 354; *Moye v. May,* 43 N. C., 131. It has no application to the property of living persons." This has been cited and affirmed. *Redmond v. Commissioners,* 87 N. C., 124; *Jones v. Gerock,* 59 N. C., 193; *Stamps v. Moore,* 47 N. C., 82, and in other cases.

From the above very clear summary it will be seen that the fiction of personal property being considered as belonging to the domicile of the owner applies only to the *distribution of the assets* of one deceased. It has no application to payment of debts, legacies, costs of administration, nor inheritance taxes or death dues. For a stronger reason the fiction cannot apply where the wife is residing here at the death of her husband as against the year's provision, which is a humane provision to keep her and children from suffering

and from being a county charge. The law sets it apart for that purpose in priority to debts, legacies, taxes and charges of administration, against none of which does the fiction of the law of domicile prevail.

The subject has been before the courts of this country in only five cases. In *Medley v. Dunlap,* 90 N. C., 527, and *Simpson v. Cureton,* 97 N. C., 112, in both of which the wife was residing with her husband in the State of his domicile at his death. In the latter case the Court, indeed, says: "This section has reference to a proceeding instituted by a resident widow." The reason for this provision of our law, therefore, did not apply, though the statute says "every widow" (Rev., sec. 3091), and it was properly held that she could not get the benefit of it by subsequently removing here. There were also the same facts in *Mitchell v. Wood,* 64 Ga., 220, though there the minority of the Court was of opinion that the widow could have her year's provision, notwithstanding she did not remove to the State till after her husband's death. In *Gilman v. Gilman,* 53 Mo., 184, the Court simply held that, the husband having died domiciled in that State, it had jurisdiction to determine the allowance to be made to the widow under their statute, and fixed the allowance at $85,000. Evidently this is not authority upon the principle on which our law allots a year's provision. In *Shannon v. White,* 109 Mass., 146, the testator died in Massachusetts, but stated in his will that he was domiciled in Indiana, where his will was probated. His divorced wife, residing in Indiana, for whom his will made no provision, applied for an allowance under the Massachusetts statute, "not to exceed her share of the estate," and it was held that, assuming she was the testator's widow, her rights in the estate must be adjudicated in Indiana.

It will thus be seen that there is no decision to the contrary of the views we have expressed. The fiction that the

law of the domicile governs as to personalty applies only to the *distribution* of the surplus and does not obtain as against debts, legacies, charges of administration and taxes, and hence cannot prevail against the year's provision, which is superior to all these, when the wife is actually and *bona fide* residing here with her children at the time of her husband's death. The technical rule that her husband's domicile is her domicile is well settled, but the fiction of domicile does not, as we have seen, control as to realty, nor even as to personalty, except in the distribution of the surplus. The year's provision is not in the nature of such distribution, but a humane provision of urgency, taking precedence of all other claims against the estate. From its very nature and purpose, it has nothing to do with the husband's domicile, but is for the support of the wife and children if residing here at his death.

Dower is alloted to the widow according to the law here, and not according to the law of the husband's domicile. There is no reason why the year's provision should not also be allotted to the widow as allowed by our statute, if she is actually and *bona fide* resident here. The statute (Rev., sec. 3091) gives the year's support to "every widow of an intestate," or who has dissented from her husband's will. That would clearly include this plaintiff. If by judicial construction some widow must be excluded, certainly, in view of the evident purpose of the law, such construction should exclude the non-resident and not the *resident* widow. Usually the husband also resides here, but words used in the statute bearing reference to that fact cannot be justly construed as having any relation to the technical doctrine of domicile. It would be a denial of the intent of the statute to send this widow and her two children, resident here, across the continent to obtain this $51.42, which they instantly need, because of the lore in the books, correct technic-

ally, but untrue here as a fact, that the wife resides where her husband does.

In nonsuiting the plaintiff there was

Error.

WALKER, J., dissenting: The plaintiff and L. L. Jones were married in this State and lived here after their marriage for seven years, when they went to Kentucky. The plaintiff and her husband parted there. She returned to this State and he went to the State of Washington, where he was domiciled at the time of his death, she being resident here at the same time. No reason for the separation is stated. The plaintiff has been allotted her year's provision, under our statute and not according to her deceased husband's domicile. If she was entitled to have it allotted under our statute and not according to the law of the State which was her husband's domicile at the time of his death, then she must succeed in this suit, but if the law is otherwise she must fail.

The domicile of the wife, instantly upon the marriage, merges in that of her husband and continues to follow it through all its changes so long as the marriage relation subsists, although she may not accompany him to his new place of abode. Tiffiny Persons and Dom. Rel., p. 53. She cannot acquire a domicile for herself as distinct from that of her husband, and even after his death she retains the domicile of her husband until she establishes one of her own. A woman, when she marries a man, does, in the most emphatic manner, elect to make his home her home. Jacob's Law of Domicile, sec. 209: "So that the domicile which a wife receives upon marriage usually is, in a certain sense, a domicile of choice, although not technically so. As regards subsequent changes, however, her will is subordinate to that of her husband, and, within reasonable limits, he is allowed to select for himself and his wife such domicile as his interests, his tastes, his

convenience, or, possibly, under certain circumstances, even his caprice may suggest. And, whatever may be the ground of the rule, the presumption of law that husband and wife dwell together is so strong that proof to the contrary, either of fact or of intention, will not be admitted in any but a few exceptional cases." *Ibid.* Several reasons have been assigned for this rule of the law: 1. The theoretical identity of husband and wife. 2. The subjection of the latter to the former. 3. The duty of the wife to make her home with her husband. *Ibid.* Whatever the true rule may be, the rule itself is well settled, and it has not been changed by our present Constitution and marriage laws, for husband and wife still, in contemplation of the law, remain one. *State v. Robinson* (at this term). She has certain property rights, it is true, but the oneness of the two, in their marriage relation, still continues, and, as will appear hereafter, she derives all her right to participate in her husband's personal property from the law of his domicile, though adopted and enforced by us as our law. The administration of the husband's local personal assets will always be carried on under the supervision and control of the Court of the *situs;* but when all the expenses of the ancillary administration and debts due creditors there are paid, the surplus will either be remitted to the place of the decedent's domicile or distributed by the Court of the *situs* in accordance with the law of that domicile, as the special facts of the case may require. Jacobs on Domicile, sec. 45. The only exception to this rule is probably in the case of taxes collectible under the laws of other States than those of the domicile, operating upon movables found within their territorial limits. *Ibid.,* sec. 42.

It is singular that we should take different views as to what was decided in the leading case of *Alvany v. Powell,* 55 N. C., 51, but it so happens that we do, as I think the clear and vigorous opinion of *Judge Pearson* demonstrates that

the principles already stated by me are applicable here.    See how lucidly he states the doctrine: "After the debts are paid, in the disposition of the surplus, our courts, from comity, adopt and act upon the laws of the country of the domicile as our law in reference to the particular case, so as to hold those entitled who would be entitled according to the law of the country of the domicile; but all this is very far from reaching the proposition that the property is not administered under the authority of our courts, and by our law.    It is clear that the authority to act, the letters testamentary or of administration by which the property is collected and reduced into possession, must be granted by our courts.    It is also clear that the debts must be paid according to the priority established by the general law, and that, in regard to the rights of creditors, we refuse to adopt, as a special law for the particular case, the law of the country of the domicile; and it is also clear that in the payment of legacies and the disposition of the surplus our courts consider those entitled who are so according to the law of the country of the domicile.    If one dies intestate, under the belief that his property will belong to certain of his kindred, because such is the law of his country, it would be hard to disappoint his expectations by enforcing the general law of the country where the property happens to be, instead of adopting for his special case the law of his country.    The administrator here proceeds, in the same manner as if the domicile was here, to administer the assets by paying debts and disposing of the residue; with respect to debts he is governed by the general law; in disposing of the residue he is to pay it to the person entitled, and the only difference is that, in ascertaining who are entitled, he is governed, not by the general law, but by a special law, which holds those persons to be entitled who would be entitled according to the laws of the country of the domicile, if the property was situate there."

Some confusion has resulted from the fact that our courts administer the laws of another country or State, which is a novelty in the science of jurisprudence, but *Judge Pearson* says, in the case cited, that, nevertheless, the principle that in particular cases our courts will adopt and act upon, as our law, the law of another jurisdiction, is a familiar one and is well settled, according to the comity of nations, "in reference to the 'disposition' of the property of deceased persons who have a foreign domicile." *Ibid.*, 58. So that the case of *Alvany v. Powell* is authority for the position that, without regard to the residence of the particular claimant of a deceased person's property, the domicile of the latter determines what law is applicable in the "disposition," in any way, of his estate. I am not speaking of real, but of personal, property, and as to the latter, when debts, costs, and taxes are paid, no part of the estate can be applied, in any form, to legacies, distributive shares, or year's support, but according to the domiciliary law. The exceptions we have stated rest upon peculiar grounds of their own. *Judge Pearson*, in *Alvany v. Powell, supra,* expressly says that the law of domicile applies to legacies and to the disposition of all the surplus of the estate after paying debts and taxes. Creditors must be paid, he says, as they have a *legal* right not dependent upon the will of the decedent or upon any mere statutory requirement. Their rights are superior to legatees, distributees, etc. The latter have no "legal" claim. Taxes must be paid, as the sovereign occupies the position of a creditor and is entitled to priority and special consideration. Minor, in his Conflict of Laws, sec. 81, p. 176, states the law with clearness: "Marital rights in the personalty of the consort, if regarded as mutual transfers of interests in the property, are transfers by operation of law, not by the voluntary act of the parties, and, like other transfers by act of the law, such as the succession to a decedent's personalty, are to be

controlled by the law of the legal *situs* of the owner, not by
the law of his actual *situs,* nor by the law of the actual *situs*
of the property.   The law of the domicile will govern the
marital rights of the parties in personal property, not only
because of the general principle just pointed out, .but also
because these rights are incidents of the marriage status, and
governed, therefore, by the same law that regulates that
status in other respects.   And it should be particularly ob-
served that the domicile whose law governs in these matters
(supposing the married pair to have changed their domicile
several times) is that domicile possessed by them at the time
the particular marital right in question became vested.   A
mere contingency cannot be said to be either a transfer or an
incident of the status.   Hence, as to rights acquired by either
in the personalty of the consort upon his or her death, as
distributee or otherwise, the law of their domicile at the time
of the death will control, not that of the domicile at the time
of the acquisition of the property, nor that of the place where
the death took place.   Such rights do not vest until the death
occurs.   Indeed, this is merely one instance of the rule that
the law of the last domicile of a decedent controls the suc-
cession to his personal property."   And Dr. Wharton, in his
Conflict of Laws (3 Ed.), p. 414, sec. 193, says: "When,
however, the personal estate of either husband or wife is to
be distributed upon intestacy, the intestate laws of the place
of the last domicile must prevail.   The right of either widow
or of surviving husband is governed, as to personalty, by the
law of such last domicile of the deceased.   Where this law
gives certain exemptions, in case of insolvency, to the widow,
she is entitled to enjoy such, though she has never herself
resided in the State."   See, also, sec. 192a; Dicey on Domi-
cile (1896), p. 655, Rule 173.

 Every section of our law relating to the widow's year's
support, and the allotment thereof, shows a clear and unmis-

takable intention to confine the provision only to widows
whose husbands are domiciled here.  For example, Revisal,
sec. 3091: "Every widow of an intestate, *or of a testator
from whose will she has dissented,* shall be entitled to a year's
allowance."  Revisal, sec. 3093: "The family of the deceased
(for the purpose of allotting a year's allowance) shall be
deemed to be, besides the widow, every child of the deceased
or of the widow who was residing with the deceased at his
death."  Revisal, sec. 3095: "Such allowance shall be
assigned from the crop, stock, and provisions of the deceased
in his possession at the time of his death."  Revisal, sec.
3097: "The value of the stock, etc., allotted shall be ascer-
tained by a justice and two persons qualified to act as jurors
of the county in which administration is granted or the will
is proved."  These provisions unquestionably show that the
Legislature was referring to the widow of an intestate or
testator who resided and was domiciled in this State at the
time of his death.  The allowance extends to the widow and
to every child who resided with the deceased at the time of
his death.  If the claimant comes here after his death, it is
admitted, in the Court's opinion, that he or she cannot have a
year's allowance allotted, and it is also expressly so decided
in two cases I will cite hereafter.  Revisal, sec. 3093, there-
fore, necessarily refers to children who lived with the intes-
tate or testator in this State at the time of his death.  Refer-
ring to section 3095 of the Revisal, is it at all likely that an
intestate residing and domiciled beyond the limits of this
State would have his crop, stock, and provisions here?  I
hardly think so, and yet we must so conclude if the construc-
tion of the statute by the Court is the correct one.  But
section 3098 of the Revisal places the meaning beyond any
doubt: "Upon application of the widow, the personal rep-
resentative of the deceased shall apply to a justice of the
peace of the township *in which the deceased resided,* or some

adjoining township, to summon two persons as jurors, who shall, with him, ascertain the number of the family of the deceased, according to the definition given in this chapter, and examine his stock, crop, and provisions on hand." There is a proviso to the section, to the effect that if the personal effects of the deceased husband shall heve been removed from the township or county in which "he resided before his death," the widow may apply to a justice of the township or county to which they have been removed. There are other provisions indicating the clear intention that the law should apply only to the widows and children of deceased persons who resided in this State at their death, or had their domicile here, but section 3098 of the Revisal so conclusively shows this to have been the intention, by its very language expressly confining the law to such widows, that it is useless to comment further upon the statute.

The question, however, has been set at rest by positive decisions of this Court, giving this construction to the statute. "The Code, sec. 2116" (Rev., sec. 3091), says this Court, in *Medley v. Dunlap,* 90 N. C., 527, "does not apply to or embrace widows of deceased husbands citizens of other States. If the Legislature has power to do so in any case, it has not seen fit to make temporary provision for such widows and their families out of assets, in this State, of deceased husbands. The purpose of the statute is to make temporary provision for the widow and such members of her family as cannot take care of themselves, immediately after the death of the husband, a citizen of this State, and until some regular provision can be made for their support according to the conditions and circumstances of the estate, and as may be allowed by law. It is very clear that the plaintiff is not entitled to a year's support, as she claims, under the laws of this State, and the judgment must be reversed, and judgment entered here for the defendant."

The Court further says: "Such property is treated in the course of administration, with the exception mentioned above (payment of debts and taxes), as if it were in the State where the owner thereof lived at the time of his death," citing *Alvany v. Powell,* 55 N. C., 51; *Jones v. Gerock,* 59 N. C., 190; *Moye v. May,* 43 N. C., 131.

The decision of this Court is put solely upon the ground stated in the passage I have taken therefrom, and the fact of the widow's residence, before or after her husband's death, had nothing to do with it, nor did the Court attach any importance to it as affecting the question one way or another. In the nature of the principle involved, it could not have done so. The Court referred to the fact that the widow came to the State, after her husband's death, incidentally and for the purpose of emphasizing the other fact that the only test for determining her right was her husband's domicile, and that her residence at any time was irrelevant to the question. That decision was affirmed later on in *Simpson v. Curelon,* 97 N. C., 112, in which *Chief Justice Smith* says: "In our opinion there is error in the ruling, and this allotment and appropriation of the assets of the estate are unauthorized and void, and afford no defense to the action. In *Medley v. Dunlap,* 90 N. C., 527, it is declared that section 2116 of The Code does not 'embrace widows of deceased husbands citizens of other States,' and that a subsequent removal to this State does not change her relations toward the estate, since they are fixed, and her rights to share therein are determined at the intestate's death, *and by the law of his domicile.* If provision is made by the law of South Carolina for the temporary relief of a decedent's family, and there is no personal property, or not sufficient to meet the requirements, it may be- that such laws would be given effect upon the principle of comity, as in the distribution among those entitled under such laws." That case is directly in point

and is, in my judgment, utterly in conflict with the ruling now about to be made. If the law is adjudged to be as stated in the opinion of the Court in this case, the two cases of *Medley v. Dunlap* and *Simpson v. Cureton* are overruled as effectually as if it had been done by explicit words. I think they should stand as containing a correct exposition of the law and one that is in harmony with a well-settled doctrine of general application, which will itself be shaken, if not overthrown, by a contrary decision, as proposed in this case. The idea of the domicile, as controlling the rights of the wife in her husband's estate after his death, permeates our statute and seems to have been embodied in its every line. To argue that the widow is entitled to a year's provision because by our statute it has a preference in the distribution of the estate is to beg the question, for it assumes that our statute applies which is the very proposition to be established. It is what the logicians call a *petitio princepii,* and is reasoning in a circle.

There is clearly no analogy between dower and year's provision. Dower is allotted according to our law, because it is assigned from the realty, which is always governed by the *lex rei sitæ* or the law of the place where the property is situated. The law is otherwise as to personal property. It is extremely dangerous to change the law—even the "lore in the books"—by judicial legislation to meet the supposed hardship of an individual case. We have often been told that what we may consider as hard cases may become the quicksands of the law. A serious mistake may be made in a case involving only forty-two dollars as well as in one involving many thousands. It is not a question of amount but of principle. A much larger amount may be involved in some future litigation than in this suit.

My personal sympathy is entirely and unreservedly with the widow, who is the plaintiff, in this case, but the law is

not. I am compelled to follow the established principle, not only because it is well established, but because, also, it is right, and has come to us through many centuries with the strong and unqualified approval of the greatest sages of the law. A new precedent, which virtually destroys a principle so ancient, and so essential to be preserved unimpaired, must sooner or later produce uncertainty and confusion and finally lead to a long train of evil consequences. "We cannot be wiser than the law," and especially that law which has been accepted almost universally as based upon the best of reasons and sanctioned by the highest wisdom and the most enlightened public policy. The Legislature may change this principle, if it will, but it has not done so, and this fact but confirms my belief that it was intended that it should remain as a part of our common law, as it still is the elementary law of other States and countries.

My conclusion is that, if the plaintiff is entitled to a year's allowance at all, it must be allotted to her according to the law of her husband's domicile, not only by the general law, but by the express words of the statute.