### HOLSHOUSER v. COPPER CO.

(Filed May 2, 1905.)

*Foreign Corporations—Receivers—Provable Claims—License Fees as Preferred Debts—Effect of Foreign Statutes—States as Claimants—Comity.*

1. Where a receiver of an insolvent foreign corporation was appointed under the corporation act of 1901, a claim by the State which chartered the corporation, for annual license fees was provable, section 194 of the Code as to actions against foreign corporations not applying to this proceeding.

2. A statute of New Jersey, providing that the annual license fees required to be paid by corporations chartered by that State "shall be a preferred debt in case of insolvency," can have no extra-territorial force and in insolvency proceedings in this State, a preference for such claim will not be allowed.

3. A foreign creditor cannot by the operation of any law of his own State acquire any preference over resident creditors in the administration of assets which are situated here.

4. The fact that the claimant is a State does not modify the general rule of comity so as to confer upon her any greater right or privilege than is possessed by the ordinary suitor in our courts.

ACTION by J. A. Holshouser Company and others against Gold Hill Copper Company, heard by *Judge C. M. Cooke,* at the September Term, 1904, of the Superior Court of ROWAN County.

This is a proceeding under the Act of 1901, Chapter 2, Sec. 73, instituted by the plaintiffs as creditors of the Gold Hill Copper Company to have a receiver appointed to take charge of its assets and apply them under the orders and directions of the court to the payment of its debts. It is alleged in the complaint that the company has suspended its ordinary business for want of funds to carry it on; that attachments have been levied upon its property, and sundry

judgments have been docketed against it, some of which are alleged to have been satisfied, though the fact does not appear upon the record; and that owing to the different dates and priorities of the liens and to the mixed character of the company's assets and the contest as to the payment of some of the aforesaid judgments and generally to the complicated condition of its affairs and the consequent difficulty of ascertaining the rights and preferences of creditors, it is necessary that a receiver should be appointed to preserve the property and save it from sacrifice by forced sale under executions. The answer denied some of the allegations of the complaint, but it is not necessary at present to do more than make a passing reference to the fact, as it does not affect the matter in dispute. The court appointed a receiver and he has taken possession of the assets of the company, and, under an order of the court requiring him to do so, he has notified all creditors to come in and prove their claims to the end that they may be passed upon and scheduled and then reported to the court. Numerous claims were presented and proved and among others one in behalf of the State of New Jersey for the sum of $12,000 for what is called in its statute "a franchise or annual license fee" due for each of the years 1901, 1902 and 1903, that is $4,000 annually. The defendant company was incorporated by the State of New Jersey, though it seems to have transacted all of its business in this State, where its assets are situated. A statute of New Jersey requires a corporation, receiving its charter from that State, to pay annually a license fee or franchise tax of a certain per centum on its capital stock, the amount in each case to be ascertained in the manner therein prescribed. It is further provided as follows: "Such tax, when determined, shall be a debt due from such company to the State for which an action at law may be maintained after the same shall have been in arrears for the period of one month; such tax shall also be a preferred debt

in case of insolvency." The receiver refused to allow this claim of the State of New Jersey upon the ground that "as a matter of law the claim of said State for $12,000 and interest, imposed for taxes upon the Gold Hill Copper Company for the years 1901, 1902 and 1903, is not provable in this jurisdiction." Counsel for the State of New Jersey excepted. This exception came on to be heard by *Judge Cooke* who reversed the decision of the receiver in principle and made the following ruling: "The court finds that the State of New Jersey is entitled to prove a claim of $8,000 with interest from the date of this judgment and it is so ordered and .adjudged, and this claim has no priority over other claims proved against this corporation."

The defendant, The Gold Hill Copper Company, and two of its unsecured creditors, James Phillips and Walter G. Newman, excepted to this judgment upon the ground that the claim is not provable in this proceeding, it being a claim of a foreign creditor or non-resident against a foreign or non-resident corporation, and the court has no jurisdiction, as the cause of action did not arise and the subject of the action is not situated in this State, within the meaning of Section 194 of The Code forbidding such actions to be brought in the courts of this State.

The State of New Jersey excepted to the judgment upon the ground that it was entitled not only to prove its claim and have it paid in this proceeding, but was also entitled to priority in payment out of the assets of the company over all of its creditors, whether holding liens by attachment, judgment or otherwise, it being by the very terms of the statute a preferred debt.

Having thus excepted, the said parties appealed to this court, the Copper Company· and its two creditors above named, uniting in their appeal.

*T. F. Kluttz* for the creditors.
*A. H. Price* and *J. H. Horah* for the State of New Jersey.

## Appeal of Newman and Phillips.

WALKER, J. After stating the facts in both appeals: The Copper Company and the two creditors who have appealed contend that the claim of the State of New Jersey is not provable in this suit, as its cause of action did not arise in this State and the subject of its action is not situated here, and they rely on the provision of Section 194 of The Code. We do not think that section applies in the way indicated by the appellants. The cause of action in this proceeding is that of the creditors of the Copper Company, and consists not only in the failure of the company to meet its obligations, but in the suspension of its ordinary business which entitled the creditors to have its assets placed in the hands of a receiver for the purpose of being applied to the payment of its debts. This proceeding is equitable in its nature and the jurisdiction of the court in respect to the claims of the creditors of the corporation must be determined not by regarding it as a suit by each one of them for the purpose of recovering his debt, as if he had brought an ordinary civil action wherein the liability would be fixed by judgment and enforced by execution, but the cause of action must be considered as one belonging to the creditors who have the right under the statute, if not on general principles of equity, to have all the assets of the concern placed in the possession of the court, through its duly appointed officer, to the end that the rights of all parties therein may be ascertained and distribution made accordingly. It has become the settled rule in this country that the assets of an insolvent corporation constitute a trust fund for the payment of its debts, and the remedy of its creditors by action in the nature of a suit in equity, or by what is called a creditor's bill, to have the assets administered for their benefit, is firmly established. *Hill v. Lumber Co.,* 113 N. C., 173; *Bank v. Cotton Mills,* 115 N. C., 507. The cause of action is the

right which arises out of the default of the corporation, thus to proceed against it for the purpose of applying its property to the satisfaction of its debts, and the subject of the action is the assets themselves which are taken into the custody of the court for the purpose of enforcing the equity of the creditors. It is not like an ordinary action for the recovery of a debt, in which the cause of action is the default of the debtor and the subject of the action is the claim or debt for which he sues. The latter cannot be maintained by a non-resident against a foreign corporation under Section 194, unless the cause of action arose in this State or the subject of the action has its situs here. So it has been held that, when an ordinary action for the recovery of a debt is brought by a non-resident against a foreign corporation and the cause of action did not arise in the State of the forum and the subject of the action is not situated there, the court has no jurisdiction though property in that State belonging to the debtor is attached, as the attachment is ancillary to the main action and the property upon which it is levied is in no sense the subject of the action. In our case, however, the proceeding is directed against the property as a fund held by the corporation in trust for its creditors and though they have no lien upon the assets of the corporation but a right of priority in payment over the stockholders, as explained by *MacRae, J.* in *Bank v. Cotton Mills, supra,* their suit to subject the assets to the payment of their claims is somewhat analagous to a suit in which it is sought to impress property with a trust in behalf of a creditor and to enforce payment of his debt out of it, and so far as the question now being considered is concerned, it is not in principle unlike a suit to foreclose a mortgage or to have administered in behalf of creditors any property or fund specially set apart by their debtor as a security for their claims. In all such cases where the property is situated in this State, suit can be brought here under Section 194 of The Code.

In the case at bar, when the receiver was appointed and notice was issued under the order of the court to creditors, those who came in and proved their claims joined with those who had originated the suit in one common cause against the defendant and while in a certain sense the action may be considered as instituted for and in behalf of each of the creditors, it is nevertheless the joint action of all, and it would be strange indeed if the jurisdiction of the court in such a case could be made to depend upon what would have been an inherent defect in the cause of action of any one of the creditors if his action had been prosecuted separately and solely for the recovery of a personal judgment to be enforced by an ordinary execution. We cannot adopt the construction suggested by counsel but must hold, on the contrary, that in a case like this one, the jurisdiction of the court must be determined by the general scope of the relief sought without reference to the character of any particular debt which may be proved before the referee. In this connection, the language of the court, speaking by *Danforth, J.* in *McKinney v. Collins,* 85 N. Y., 221 and construing similar words in the code of that State, seem applicable. "It is therefore apparent that the phrases 'cause of action' and 'subject of action' are not used interchangeably or as synonyms. It is not easy to define their precise meaning, but it seems apparent they relate not to an action at law, though to one which formerly would have proceeded in equity; the object being to give some specific relief rather than a simple judgment against a person, as in an action to cancel a mortgage upon the ground of usury, or to enforce specific performance, or to attain such relief as by the rules of the common law was denied to the suitor in its forum, certainly not an action where the only relief sought was a judgment upon contract for the payment of money." We are not required to assent to the view that the words of the statute should be confined strictly to suits cognizable formerly by courts of equity, as it is suffi-

cient for our purpose that, in the case cited, the jurisdiction of the court is conceded where a fund is brought under its control to be administered for the benefit of creditors, even if some of the plaintiffs are non-residents.

The ruling of the court that the claim of the State of New Jersey is provable in this case was in our opinion correct.

No Error.

## APPEAL OF THE STATE OF NEW JERSEY.

WALKER, J. In this appeal the question is presented whether the State of New Jersey is entitled to priority or preference over the other creditors, and especially over the lien creditors, in the payment of the debts of the Copper Company out of its assets which are now in the hands of the receiver. When it was provided by the State of New Jersey that the "annual license fee or franchise tax" should be a preferred debt in case of insolvency, it was evidently the purpose that the words should apply only to such proceedings in insolvency as should be instituted in that State, for we must presume that the legislature did not intend that the statute should have any force beyond the territorial limits of the State, its operation being restricted to those limits except in so far as it may be given effect in another State by the law of comity. *McLean v. Hardin,* 56 N. C., 294. We find upon examination of the laws of New Jersey that there is a statute there substantially like the act of 1901 (chapter 2 section 73) and strikingly similar in phraseology. It must be conceded that the State of New Jersey had no power to provide how the assets of a corporation situated in this State shall be distributed, or, by force of its statute, to confer any right of priority upon one of her own citizens or upon herself in respect to those assets. They are here and always have been here, and are subject to the operation of the laws of the State, the *lex loci rei sitae,* or the law of

the forum in which they have been sequestered for the bene-
fit of the creditors of the corporation. *Hunt v. Gilber,* 54
Ill. App. 491; *Kruger v. Bank,* 123 N. C., 16. It has been
established by the great weight of authority, as a part of the
settled jurisprudence of this country, that personal prop-
erty, as against creditors, has locality, and the *lex loci rei
sitae* prevails over the law of the domicil, with regard to
the rule of preferences in the case of insolvent estates. The
laws of other governments have no force beyond their ter-
ritorial limits, and if permitted to operate in other States,
it is upon a principle of comity and only when neither the
State nor its citizens would suffer any inconvenience from
the application of the foreign law. *Dunlap v. Rogers,,* 47
N. H., 281; *Harrison v. Sterry,* 5 Cranch, 298; *Ogden v.
Saunders,* 12 Wheat., 214. The general rule is beyond ques-
tion that one State cannot prescribe a rule of action for an-
other, but each must exercise its sovereign power within its·
own sphere and without exerting any influence upon the
course of procedure or the administration of the law in any
other jurisdiction. When the courts of a State give effect
to a foreign law, it is by courtesy, or, what we call in the
law, comity; and such effect of the law results solely from the
exercise of this act of favor and not from any intrinsic extra
territorial force of the law itself, but because by comity we·
make it our law. *Alvany v. Powell,* 55 N. C., at p. 59.
Discussing this question, Story in his Conflict of Laws, (8th
Ed.) Sec. 414, says: "If there is in such cases a conflict be-
tween our own laws· and foreign laws as to the rights of our
citizens and one of them must give way, our own laws ought
to prevail. The most convenient and practical rule is that stat-
utable assignments, as to creditors, shall operate intra terri-
torially only. If our citizens conduct themselves according
to our laws in regard·to the property of their debtors found
within our jurisdiction, it is reasonable that they should reap
the fruits of their diligence, and not be sent to a foreign

country to receive such a dividend of their debtors' effects as the foreign laws allow. If each government in cases of insolvency should sequester and distribute the funds within its own jurisdiction, the general result would be favorable to the interest of creditors and to the harmony of nations. This is the rule adopted in all cases of administration of the property of deceased persons; and there is no real difference between the principle of those cases and of cases of bankruptcy." A case very much like ours was presented in *Willitts v. Waite,* 25 N. Y., 577: "The acceptance of the charter" says the court in that case "with this provision for a distribution of its effects upon the happening of insolvency, cannot operate to give to the transfer the effect of a voluntary conveyance of the assets. The title of the trustees is a statutory title, and must defer to the lien acquired by the creditors attaching the property in this State. Creditors within this State, having acquired a lien under our laws upon property within the State, will not be deprived of their lien and sent to a foreign State to seek such portion of the insolvent estate as the laws of that State will, upon distribution, give them. The State will do justice to its own citizens so far as it can be done by administering upon property within its jurisdiction, and will yield to comity in giving effect to foreign statutory assignments only so far as may be done without impairing the remedies or lessening the securities which our laws have provided for our own citizens." Many authorities could be cited in support of the principle thus stated. A few only will suffice. Smith's Eq. Rem. of Creditors, Sec. 241; Jones on Liens, (2nd Ed.) Sec. 111; 2 Thomp. Corp. Sec. 7064, where the cases are collected in the notes. A good statement of the doctrine will be found in Minor's Conflict of Laws p. 12 Sec. 7: "It is natural," he says, "and not at all to be reprobated that the courts of the forum should refuse to enforce a foreign law, if to do so would result in injustice to their own people. The object

of the enforcement of a foreign law in any case is to mete
out as far as possible exact justice to all concerned, as well
as to give due effect to the laws of other States. But the
first and most important of these objects fails altogether
when the enforcement of the 'proper law' would result in in-
justice and loss to innocent citizens of the forum. As be-
tween the latter and strangers, it is not remarkable that the
courts should elect in a close case to decide the matter in ac-
cordance with the *lex fori,* thus giving their fellow citizens
the advantages conferred upon them by the law under which·
they live and ordinarily transact their business. The ob-
servance of comity towards other States cannot reasonably
be expected at the expense of injustice to residents of the
forum, for whose benefit the courts and the law are primarily
instituted. The existence of this exception to the enforce-
ment of the 'proper law' is beyond dispute, though its limits
are not yet precisely defined." In *Hornthal v. Burwell,*
109 N. C., 10, *Shepherd, J.* thus states the principle: "The
authority of such laws however is admitted in other States,
not *ex proprio vigore* but *ex comitate,* and hence it is now
very generally held that when they 'clash with and· inter-
fere with the rights of the citizens of the countries where
the parties to the contract seek to enforce it, as one or the
other of them must give way, those prevailing where the re-
lief is sought must have the preference." The learned
judge then discusses the matter at length and shows what
are the proper limitations of this law of comity in its prac-
tical application to the question there involved. The true
principle was well expressed and illustrated in the case of
*Olivier v. Townes,* 7 Martin (La.), 50; s. c., 2 La. Term
Rep. N. S., 93. "The municipal laws of a country," says
the court, "have no force beyond its territorial limits, and
when another government permits these to be carried into
effect within her jurisdiction, she does so upon a principle
of comity. In doing so care must be taken that no injury

138——17

is inflicted on her own citizens, otherwise justice would be sacrificed to courtesy, nor can the foreigner or stranger complain of this. If he sends his property within a jurisdiction different from that where he resides, he impliedly submits it to the rules and regulations in force in the country where he places it. *What the law protects it has the right to regulate."* So it is in this case. When the Copper Co. was chartered and permitted to migrate from its domicile and conduct its business in this State where it has acquired property under the protection and operation of the local laws, its assets should in all fairness be held subject to the provisions of those laws in favor of persons who have dealt with it here as a domestic corporation which is virtually its true character, though in law it is considered as a corporation of New Jersey. *Goodwin v. Claytor,* 137 N. C., 224.

This court said by *Shepherd, J.* in *Armstrong v. Best,* 112 N. C., 62, quoting from *Bank of Augusta v. Earle,* 13 Peters 519, "The comity thus extended to other nations is no impeachment of sovereignty. It is the voluntary act of the nation by which it is offered, and is inadmissible when contrary to its policy or prejudicial to its interests." The same principle applies as between the States as is shown in *Armstrong v. Best.*

The law of comity in its different phases was considered in the following cases: *McNeil v. Colquhoon,* 3 N. C., 24; *Moye v. May,* 43 N. C., 131; *Alvany v. Powell,* 55 N. C., 51; *Carson v. Oates,* 64 N. C., 115; *Findley v. Gidney,* 75 N. C., 395; *Hyman v. Gaskins,* 27 N. C., 267; *Stamps v. Moore,* 47 N. C., 80, and the early case of *Leake v. Gilchrist,* 13 N. C., at p. 85. They all lead us to the conclusion that a foreign creditor cannot, by the operation of any law of his own State, acquire any preference over resident creditors in the administration of assets which are situated here. The property now in the custody of the court has never been in the State of New Jersey, and her laws cannot in any way affect

its status or prejudice the rights of resident creditors of the corporation in respect to any liens thereon which they may have acquired. *McNeil v. Colquhoon, supra.*

There is nothing in the sovereignty of New Jersey as a State which entitles her to any special favor in the consideration of the claim she now presents, or which modifies the general rule of comity so as to confer upon her any greater right or privilege than is possessed by the ordinary suitor in our courts. We will extend to her all possible courtesy in the prosecution of her claim, but we cannot be expected to contravene the settled policy of the State or to sacrifice the interests of our citizens in doing so. Their rights are fixed by the law which we could not change if we would.

The ruling of the court in this appeal also was correct.
No Error.