No. 38,836

THE STATE OF OKLAHOMA, ex rel. OKLAHOMA TAX COMMISSION, *Appellee*, v. THE H. D. LEE COMPANY, INCORPORATED, a Corporation, *Appellant*.

(254 P. 2d 291)

Opinion filed March 7, 1953.

*Henry G. Eager*, of Kansas City, Mo., argued the cause, and *Roy N. McCue* and *Howard F. McCue*, both of Topeka, and *Charles M. Blackmar* and *Charles B. Blackmar*, both of Kansas City, Mo., were with him on the briefs for the appellant.

*R. F. Barry*, of Oklahoma City, Okla., argued the cause, and *Lester M. Goodell, Frederick A. Mann* and *Margaret McGurnaghan*, all of Topeka, and *W. F. Speakman* and *E. J. Armstrong*, both of Oklahoma City, Okla., were with him on the briefs for the appellee.

The opinion of the court was delivered by

PRICE, J.: This was an action by the state of Oklahoma, upon the relation of the Oklahoma Tax Commission, to recover from defend-

ant, The H. D. Lee Company, Incorporated, a corporation, sales taxes on merchandise sold by defendant to an Oklahoma concern. Judgment was for plaintiff and defendant has appealed.

The parties entered into a stipulation of facts, and since it best tells the story will be set out in full:

"1. That at all of the times referred to in the petition the defendant was a corporation organized and existing by the virtues of the laws of the state of Kansas. In its Articles of Incorporation, Topeka, Kansas, was designated as the situs of its principal place of business. At all times material to this proceeding defendant maintained its principal office and place of business in Kansas City, Missouri. At all times referred to in the petition plaintiff existed as an executive branch of the government of the State of Oklahoma and under the applicable statutes of said state was charged with the duty of administering its sales tax statute and of collecting the tax levied by said statutes. The plaintiff by statute was authorized to institute and maintain actions at law for the purpose of collecting a sales tax liability in the same manner as provided for in collecting a personal debt.

"2. Any court that may hear and consider or review the issues presented in the above styled and numbered cause shall be privileged and entitled to take judicial knowledge of any statute of the State of Oklahoma that bears on said issues and of any decision of the Supreme Court of Oklahoma construing any of said statutes.

"3. That at all of the times in controversy the defendant was engaged in selling at wholesale groceries and other merchandise from a stock kept at Kansas City, Missouri, and other cities and points outside the State of Oklahoma. Between January 1, 1943, and December 31, 1950, inclusive, the defendant made numerous and sundry sales of groceries and other merchandise to the Hillcrest Memorial Hospital, a corporation of Tulsa, Oklahoma, which corporation, as a matter of convenience is hereinafter referred to as 'Hospital.' The schedule attached to the petition filed herein as 'Exhibit 'A' correctly identifies the several vouchers issued by the Hospital in connection with checks that it issued in payment of merchandise sold to it by defendant; the year in which the sales were made, the aggregate amount of the gross proceeds of the sales each month and the amount of tax and penalty due and owing in connection with each month's sales if the gross proceeds thereof are in fact subject to an Oklahoma sales tax. It is agreed and understood that defendant does not by agreeing to the precise amount of tax that would be due and owing if the sales in controversy are subject to an Oklahoma sales tax thereby agree that said sales are subject to said tax and it is agreed that defendant in fact contends that the sales are not subject to tax, and it is further agreed and understood that defendant contends that even if the court shall determine that taxes may be recovered by plaintiff from defendant in this action, the penalties provided by the taxing institution may not be so collected.

"4. During all of the time in controversy the defendant had in its employ, residents of the State of Oklahoma who within said state solicited and took orders in writing from the Hospital and others in Oklahoma covering the sale of its merchandise. It is agreed that the photostatic copy of a purchase order

attached to the petition as 'Exhibit B,' which order is under date of September 19, 1949, is a true and correct copy of the original order taken by defendant from the Hospital covering the sale of merchandise therein described and that the order is representative of all of the other purchase orders given to the defendant by the Hospital for merchandise during the period of time in controversy.

"5. The defendant agreed to and did deliver in motor trucks all merchandise ordered by the Hospital, which deliveries were made to the Hospital's place of business in Tulsa, Oklahoma. Upon the merchandise being delivered, the defendant caused to be executed and did deliver to the Hospital an instrument in writing that is commonly known as an 'Invoice.' It is agreed that the photostatic copy of an invoice attached to the petition as 'Exhibit C,' which invoice was executed and delivered upon delivery of the merchandise covered by the aforesaid purchase order of September 19, 1949, is a true and correct copy of the original invoice and is representative of all of the other invoices executed and delivered by defendant to the Hospital upon delivery of merchandise ordered by the Hospital during the period of time in controversy. After the Hospital had received the merchandise ordered and an invoice covering same, it at or near the end of the month in which the merchandise was received, paid for same by forwarding a check to the defendant's office in Kansas City, Missouri.

"6. All of the Hospital's purchase orders were forwarded to defendant's Kansas City, Missouri, office by its salesmen, from which city the orders were filled by loading the merchandise ordered, together with merchandise ordered by other of the defendant's customers with places of business in Oklahoma, Missouri and Kansas, into motor trucks and transporting the merchandise to the Hospital's place of business in Tulsa, Oklahoma, and to the places of business of other customers. The defendant did not transport for hire in Oklahoma and its transportation activities were limited to the delivery of merchandise that it sold.

"7. The defendant did not during any of the time in controversy keep in Oklahoma a stock of merchandise nor did it own any property, real or personal, that had an Oklahoma situs, nor did it maintain an office or place of business in Oklahoma, nor was it qualified to do business in Oklahoma. It is agreed and understood that the plaintiff contends that the defendant owned the merchandise that it sold to the Hospital and to others in Oklahoma to which it made sales until such time as the merchandise was delivered and that defendant contends that title and ownership of the merchandise sold to the Hospital and its other customers in Oklahoma passed from it to the purchaser in Kansas City, Missouri.

"8. The motor trucks in which the merchandise that was sold by defendant to the Hospital and its other customers in Oklahoma was transported were owned by Columbia Truck Leasing of Kansas City, Missouri. During the period of time in controversy the defendant under the terms of a lease with the owners of the trucks was privileged and entitled to transport under the owners' I. C. C. permit; to the exclusive use of the trucks to transport the merchandise sold by it; to place its employees in charge of the trucks and to direct said employees when and where to transport the merchandise that it sold; to display

in prominent letters on the truck its corporation name, all of which rights and privileges it elected to and did exercise during the period of time in controversy.

"9. In connection with its transportation activities in Oklahoma, the defendant on September 13, 1949, caused to be filed with the plaintiff, an application for a Motor Fuel Importer For Use Permit, a copy of which is attached hereto as 'Exhibit D.' The aforesaid application was granted and a 'Motor Fuel Importer For Use License' No. 8370 was issued to defendant by plaintiff on September 22, 1949. A copy of said license is attached hereto as 'Exhibit E.' On September 13, 1949, the defendant also caused to be filed with the plaintiff an application for a license to import motor fuel into Oklahoma in supply tanks of motor vehicles for use on Oklahoma highways, which application was granted by the plaintiff on October 8, 1949. A copy of the aforesaid application and the order of the plaintiff granting same is attached hereto as 'Exhibit F.' From the date of the aforesaid license to the close of the year 1950, the license so issued to defendant was in full force and effect and the defendant operated the trucks that it used in Oklahoma thereunder. During the period of time in controversy the trucks used by defendant in making deliveries in Oklahoma travelled approximately 40,000 miles each year over the highways of said state.

"10. The several Exhibits that are herein referred to, which are either attached to the petition or to the stipulation are by reference made a part hereof.

"11. If the responsible officers of the H. D. Lee Company, Inc., who were acquainted with the operations of its grocery department during the period here in controversy were present they would testify in substance as follows:

'Orders received by salesmen who made contact with the hospital were subject to acceptance or rejection at the office of the company in Kansas City, Missouri, and salesmen such as those who made contact with the hospital had no authority finally to accept or to reject such offers.'

"If the officials of the hospital who were acquainted with its business operations during the period of controversy were to testify, they would testify in substance as follows:

'They were never advised that orders placed with defendant's salesmen were subject to approval by defendant at its office in Kansas City, Missouri, or at any other place outside the State of Oklahoma and that they believed that the salesmen had authority to bind the defendant to furnish the merchandise ordered.' "

Upon the issues joined by the pleadings and the stipulation of facts, the court entered judgment against defendant—

". . . in the principal amount of $828.81, together with a 10% penalty thereon in the amount of $82.88 and interest at the rate of 1% per month on the tax liability that accrued each month from January, 1943, to December, 1950, inclusive, computed from the month following the month in which the liability accrued, or $477.84 as interest to date, making an aggregate liability and judgment as of this date of $1,389.53; that $828.81 of said judgment shall bear interest at the rate of 1% per month from March 4, 1952, until paid."

The first question presented concerns the application of our statute (G. S. 1951 Supp. 79-2910a) with respect to plaintiff's right to bring the action in this state. The statute reads:

"That any state of the United States of America or any political subdivision thereof shall have the right to sue in the courts of Kansas to recover any tax which may be owing to it when the like right is accorded to the state of Kansas and its political subdivisions by such state, whether such right is granted by statutory authority or as a matter of comity."

Oklahoma has had a similar comity statute since 1939 (68 O. S. 1951, § 1483).

Defendant contends the language of our statute, "any tax which *may be* owing" (our emphasis), clearly refers to taxes becoming due *subsequent* to the effective date of the act (June 30, 1951) and therefore could not operate retroactively so as to create in plaintiff a cause of action to recover taxes due and owing *prior* to that date.

We think defendant's construction of the statute is too strained. In the first place, the statute does not create a cause of action where none previously existed. It simply provides a remedy—it merely opens the doors of Kansas courts to other states which grant the same privilege to Kansas. Taxes are "owing" when there exists an obligation for their payment. As used in the statute, the words "may be owing" clearly mean such taxes as are "presently owing" at the time of commencement of suit, and are not limited to future taxes accruing after the passage of the act. Under pertinent Oklahoma statutes, later referred to, that state was given a cause of action to recover taxes owing to it before the Kansas statute was enacted, and our statute grants specific authority to Oklahoma to bring the action for their recovery in this state.

Defendant also argues that under the doctrine of *"forum non conveniens,"* meaning "a forum not convenient," and said to be a rule of convenience and expediency rather than one of jurisdiction (37 C. J. S., Forum, Note 94 (10), p. 133), plaintiff should not be permitted to bring this action in Kansas. A short answer to this contention is that the record utterly fails to establish that defendant has in any way been "inconvenienced" by being forced to defend the action in this state. Furthermore, defendant is a Kansas corporation and according to its charter Topeka is designated as the situs of its principal place of business. There is no showing that the lower court abused its judicial discretion in accepting jurisdiction of the case. (For a discussion of the doctrine see 14 Am. Jur., Courts, § 230, p. 424, and annotation at 87 A. L. R. 1425.)

Defendant further contends that Oklahoma is without authority to impose and collect the sales taxes in question because to do so

would place a cumulative burden upon the free flow of goods between states in violation of the interstate commerce clause (Art. 1, Sec. 8) of the Federal constitution, the argument being that of the incidents making up the sales in question the greater number, and also those of greater significance, took place in Missouri rather than in Oklahoma, and that only Missouri could lawfully assess such a tax.

Plaintiff's answer to this argument is that title to and possession of the merchandise passed in Oklahoma; that the sales were in fact consummated there, and therefore that state unquestionably has the right to impose and collect the tax.

We think defendant's contentions in this respect cannot be sustained. Applicable Oklahoma statutes, all references being to 68 O. S. 1951, provide:

§ 1251c levies a tax of 2% upon the gross proceeds or gross receipts derived from all sales of tangible personal property.

§ 1251a (c) defines the word "sale" as meaning the transfer of either the title or possession of tangible personal property for a valuable consideration, regardless of the manner or method by which such transfer is accomplished.

Under § 1251i the tax so levied is to be paid by the consumer or user to the seller, and it is the duty of each seller to collect from the consumer or user the full amount of the tax.

By § 1251f the duty is placed upon the seller to pay to the state the tax so collected from the sale of tangible personal property.

See also *Selected Invest. Corp. v. International Trading Syn.*, 207 Okla. 523, 251 P. 2d 502, 503, where it was said:

"Under the provisions of the Sales Tax Act, 68 O. S. 1951 § 1251f, the seller is the taxpayer, although by 68 O. S. 1951 § 1251i, the tax must be passed on to the consumer and paid by him."

Without repeating the mechanics of the sales under consideration which are set forth in the stipulation of facts, it seems clear that under the Oklahoma statute (1251a [c]), *supra*, the sales took place in that state. It was there that occurred the transfer of title and possession of the merchandise. The invoices stated the sales were "F. O. B. Tulsa" and it was at that place where physical delivery and transfer of possession were had. In 46 Am. Jur., Sales, § 442, p. 609, the general rule is stated:

"Where the contract provides for a sale f. o. b. the point of destination, the title is generally held not to pass, in the absence of a contrary intention between the parties, until the goods have been delivered at the point designated."

In *Hunter v. Kramer*, 71 Kan. 468, 80 Pac. 963 (Memorandum Decision, 75 Kan. 856, 88 Pac. 1134), it was held:

"If under a contract of sale the seller is to deliver the property sold at a designated place, and receive payment on delivery, the general rule is that the title will not pass until delivery is there made." (Syl. 1.)

There is nothing in the record to indicate that it was the intention of the parties that title to the merchandise should pass in Missouri, so as to bring the matter within the rule stated in *Wing v. Mid-Continent Seeds*, 170 Kan. 242, 225 P. 2d 78, to the effect that where the contract of sale does not provide as to passage of title the primary consideration in determining whether title has passed is the intention of the parties.

The sales here having taken place in Oklahoma, the imposition of a sales tax by that state is not violative of the interstate commerce clause of the Federal constitution merely for the reason the merchandise was transported to that state from Missouri.

"It is well settled that a producer or manufacturer who ships motion picture films from one state to exhibitors in another state to be exhibited by the latter is engaged in interstate commerce. But when an article that has been transported in interstate commerce has arrived at a destination and is there held for use or disposal, it passes under the protection of state law and becomes subject to the taxing and police power of the state." (*Tad Screen Advertising v. Oklahoma Tax Com'n*, 126 F. 2d 544, 548.)

See also the case of *Montgomery Ward & Co. v. Commission of Revenue and Taxation*, 156 Kan. 408, 133 P. 2d 1008, where at page 414 it was said:

"Since we have concluded that they were Kansas sales or sales made in Kansas it is not necessary for us to discuss the question of the interstate feature of the transaction except to point out that sales of this type have been held to be assessable under local sales-tax statutes." (Citing cases.)

And finally, it is contended by defendant the court erred in rendering judgment for the 10% penalty in the amount of $82.88, and we are cited to authorities to the effect that one state will not enforce the penal laws of another. (15 C. J. S., Conflict of Laws, § 4, p. 856; 11 Am. Jur., Conflict of Laws, § 6, p. 303.) That such is the general rule is conceded, but its application here depends upon whether the provisions of the Oklahoma statutes make the 10% item a "penalty" or a part of the tax by way of interest exacted for delinquency in payment.

68 O. S. 1951, § 1466 (c), provides that if any tax due, or any part thereof, is not paid within thirty days after it becomes de-

linquent a penalty of 10% of the total amount due and delinquent shall be added thereto, collected and paid. § 1466 (d) provides for a penalty of 25% of the amount of the assessment for failure or refusal of a taxpayer to file a report or return required by any state tax law within ten days after a written demand for such report or return has been served upon the taxpayer. § 1466 (f) provides that all *penalties* or *interest* imposed by the act or any state tax law are recoverable by the tax commission *as a part of the tax with respect to which they are imposed.* § 1464 provides that all taxes, fees, interest and penalties imposed by any state tax law, from the time the same shall become due, may be collected in the same manner as a personal debt of the taxpayer to the state of Oklahoma.

It seems clear that under these statutes, and particularly § 1466 (f), the 10% penalty provided for by § 1466 (c) for failure to pay within thirty days after the tax becomes delinquent is actually a part of the tax by way of interest exacted for delinquency in payment, and is therefore recoverable in an action brought in a court of this state. We have no doubt that in enacting G. S. 1951 Supp. 79-2910a, *supra,* our legislature intended that if the situation here present were reversed Kansas would be entitled to recover under a comity statute of another state the interest and penalties contained in our sales-tax statute (G. S. 1949, 79-3615). See also *Machinery Co. v. Smith,* 87 Kan. 331, 124 Pac. 414, 41 L. R. A. (N. S.) 379, Anno. Cas. 1913 E, 243 (96 Kan. 213, 150 Pac. 568), to the effect the rule that a penal statute will not be enforced outside the territorial jurisdiction of the legislature enacting it applies only to such statutes as are entirely penal and not to those which are in part compensatory. The item in question was properly included in the judgment rendered.

The judgment of the lower court is affirmed.