STATE OF OKLAHOMA, EX REL. OKLAHOMA TAX COMMISSION
*v.* NEELY.

5-684                                                          282 S. W. 2d 150

Opinion delivered June 20, 1955.

[Rehearing denied October 3, 1955.]

*Harper, Harper & Young, R. F. Barry* and *E. J. Armstrong,* for appellant.

*Warner & Warner,* for appellee.

GEORGE ROSE SMITH, J. This is an action by the State of Oklahoma to recover income taxes in the amount of $9,292.91, with interest. The complaint contains three separate counts, one for the year 1948, one for 1949, and one for 1950. It is alleged that for each of those years the defendant failed to pay the Oklahoma income tax upon rentals received by him upon mining machinery located in that state. The defendant's demurrer to each count in the complaint was sustained by the circuit court, and the action was dismissed.

The basic question is whether Oklahoma can maintain a suit in the Arkansas courts for the recovery of taxes. By Act 73 of 1951 it is provided: ''Any State of the United States of America, or any political subdivision thereof shall have the right to sue in the courts of Arkansas to recover any tax which may be owing to it when the like right is accorded to the State of Arkansas and its political subdivisions by such State, whether such right is granted by statutory authority or as a matter of comity.'' Ark. Stats. 1947, § 84-3203. It is conceded that Oklahoma has a similar statute and thus meets the condition imposed by our law.

The appellee, relying upon *Jacobus* v. *Colgate,* 217 N. Y. 235, 111 N. E. 837, Ann. Cas. 1917E, 369, contends that the statute should not be applied retroactively to a suit involving a tax liability that accrued before the effective date of the act. The appellant answers that a prospective application of the statute would merely limit its operation to suits filed after its passage, regardless

of when the tax accrued. See *Oklahoma ex rel. Okla. Tax Com'n* v. *H. D. Lee Co.,* 174 Kan. 114, 254 P. 2d 291.

Without determining the merits of this question we prefer to rest our decision upon the simpler premise that Oklahoma could have maintained this action even if the tax reciprocity statute had not been passed. In our opinion the oft-repeated dogma, that one sovereign does not enforce the revenue laws of another, is rapidly approaching a deserved extinction in those instances in which the dispute is not international but merely interstate.

The history of this rule is traced in a note in 29 Columbia Law Review 782. It originated in England in the latter part of the eighteenth century and is based largely upon two statements by Lord Mansfield, to the effect that one nation does not take notice of the revenue laws of another. The English cases of course involved the laws of nations rather than the laws of the American states. Too, in none of those cases was a foreign sovereign actually denied access to the English courts. Instead, the rule was announced in situations in which the courts elected to enforce commercial contracts despite the fact that they were in some way violative of the revenue laws of the country in which they were executed.

In America the fact that the rule was a familiar principle of law may well have deterred the states from seeking one another's assistance in the collection of taxes. At any rate, for whatever reason, in the American cases prior to the twentieth century the rule is seldom mentioned and is usually dictum. In 1905, however, North Carolina departed from precedent to the extent of permitting New Jersey to prove a tax claim in an insolvency proceeding. *J. S. Holshouser Co.* v. *Gold Hill Copper Co.,* 138 N. C. 248, 50 S. E. 650, 70 L. R. A. 183. The court may have considered the doctrine not to have been involved, for the opinion did not mention it.

It was not until 1921 that the traditional rule was unequivocally applied by an American court of last resort as a ground for denying the assertion of a tax claim by a sister state. In *Colorado* v. *Harbeck,* 232 N. Y. 71,

133 N. E. 357, New York refused to entertain a suit brought by Colorado for the collection of inheritance taxes. The *Harbeck* decision is sometimes referred to as the leading case on the subject, and so it is in New York, where it has been often followed by the lower state and federal courts. Elsewhere, however, its adherents are few, and even in New York the law has been changed by statute. McKinney's Consolidated Laws of New York, Tax Law, § 249-t.

After the *Harbeck* decision the soundness of the ancient doctrine, by then a hundred and fifty years old, became increasingly the subject of reconsideration, at first in the law schools and later in the courts and legislatures. We have already cited an early law review note. In 1932 Robert A. Leflar painstakingly analyzed the entire question and demonstrated, we think unanswerably, that there is no reason whatever for one American state to reject another's suit for the recovery of taxes, absent some strong ground of local public policy or some inability to provide the remedy sought. Leflar, Extrastate Enforcement of Penal and Governmental Claims, 46 Harv. L. Rev. 193, 215 *et seq.*

The original rule, in its application to cases of international aspect, may well find some justification in one sovereign's reluctance to inquire into another's system of law or to risk the giving of affront by the denial of a sovereign demand. Obviously these considerations are without weight in litigation originating in and confined to the United States.

On the other hand, the rule encourages willful, dishonest tax evasion. As Professor Leflar points out, the higher tax rates that have resulted from the broadening of governmental services have provided a correlatively stronger incentive for tax avoidance. A few decades ago taxes were generally modest enough to constitute an annoyance rather than a substantial burden upon income or property. But today an income or estate levy may consume half or more of the object taxed, supplying a tempting motive for tax evasion.

Enforcement of the rule now in question offers a legally respectable asylum to the tax dodger. An heir, for example, may frequently be in a position to convert an inherited fortune into cash and move to another state. If pursued in his new home by the defrauded state he may confidently demur even to allegations of conscious and deliberate wrongdoing, for one sovereign does not notice the revenue laws of another. Other similar examples come readily to mind.

Once the fallacies in the traditional view had been exposed, the doctrine quickly became obsolescent. By now about half the state legislatures have approved reciprocity laws. In the courts the trend is in the same direction. In 1946 the original principle was re-examined and rejected in Missouri. *State of Oklahoma ex rel. Okla. Tax Com'n v. Rodgers,* 238 Mo. App. 1115, 193 S. W. 2d 919, 165 A. L. R. 785. Kentucky quickly followed Missouri's lead. *State of Ohio ex rel. Duffy v. Arnett,* 314 Ky. 403, 234 S. W. 2d 722. In its 1948 supplement to the Restatement of Conflict of Laws, § 610, the American Law Institute rescinded its earlier assertion of the older view and stated that if a position were to be taken it would seem desirable to follow the Missouri decision.

Since the case at bar is one of first impression in this state, our legislature could not have been certain of the Arkansas law when it adopted a reciprocity statute in 1951. Quite evidently the legislative purpose was not primarily to change the law but to put Arkansas in a position to take advantage of like legislation elsewhere; for the emergency clause declares that the evasion of Arkansas taxes has been continuous and frequent and that there is no adequate legal machinery for the recovery of taxes due the State of Arkansas. In adopting what we think is now the majority rule we confirm the legislative declaration of Arkansas's position in the matter.

Even though Oklahoma's action is maintainable, there remains a question of limitations, as to which the

law of the forum governs. *Moores* v. *Winter,* 67 Ark. 189, 53 S. W. 1057. The appellee demurred separately to the three causes of action, as the Civil Code permits. Ark. Stats., § 27-1120. We assume, without deciding, that the parties are correct in their common contention that the three-year statute of limitations is controlling. Ark. Stats., § 37-206.

By Oklahoma law an income tax return is due and the tax payable on March 15 next succeeding the close of the taxable calendar year. Okla. Stats., Title 68, §§ 884 and 901. Hence the taxes for the three years now in issue were respectively due on March 15 of 1949, 1950, and 1951. The present suit was not filed until February 11, 1954. It follows that the action is barred for the first two years but not for the third.

Affirmed as to counts one and two, reversed as to count three.

McFADDIN, J., concurs in part and dissents in part.

ED. F. McFADDIN, Associate Justice (concurring and dissenting). It is my mature conclusion that the State of Oklahoma is entitled to prevail as to *all* counts in this case. Kansas has a tax reciprocity statute similar to our Act 73 of 1951. The Supreme Court of Kansas construed the Kansas Statute in the case of *State of Oklahoma* v. *H. D. Lee Co.,* 174 Kan. 114, 117, 254 Pac. 2d 291. I agree with the construction which the Kansas Supreme Court gave to its tax reciprocity statute; and I think that, under the Arkansas tax reciprocity statute, the State of Oklahoma is entitled to full recovery in this case.