## Giordano Estate

*Daniel S. Greenstein*, for accountant.

*Joseph Lurie*, for claimant.

SHOYER, J., April 7, 1958.—Frank Giordano died October 10, 1956, intestate, not survived by a spouse, and leaving, as appears from the statement of proposed distribution, as the persons entitled to his estate

under the intestate laws, five sons, Jack F. Gordon, Frank Giordano, Thomas Giordano, Anthony Giordano and Joseph Giordano, a daughter, Josephine Vazzechero, and a grandson, James Cedrone. All the issue are living and sui juris except Thomas Giordano, who is in the Philadelphia State Hospital at Byberry ...

The Commonwealth presented a claim for maintenance of Thomas Giordano, one of decedent's five sons, at the Philadelphia State Hospital from August 28, 1944, to October 10, 1956 (less paroles), in the amount of $7,081.87. Against this sum credits of $95 for payments made by Thomas' wife and daughter commencing a year and a half ago were admitted, leaving a net claim of $6,986.87, which exceeds the balance in the account available for distribution.

The attorney for the accountant contested the claim, in the first instance demanding proof of the amount allegedly due and, secondly, demanding that the Commonwealth should allow credit toward its claim for work done by Thomas in serving six days a week as counterman in the hospital's cafeteria. Proof of the claim was made by introducing in evidence a detailed statement of the annual charges for maintenance prepared by the Department of Revenue, issued under its seal, on behalf of the Philadelphia State Hospital, and certified by an agent of the Department of Revenue as being true and correct.

By section 5 of the Act of June 1, 1915, P. L. 661, 71 PS §1785, such statement is prima facie evidence in any court of this Commonwealth of the amount expended by the Commonwealth for the support or maintenance of a patient in any proceeding brought to recover the amount of such maintenance: Frey's Estate, 342 Pa. 351, 355; Harnish's Estate, 268 Pa. 128. John W. Bradley, the Revenue Agent who had signed the above statement, also took the witness stand and testified as to the manner in which this and similar

claims for maintenance are compiled by the Commonwealth. I find that the claim of the Commonwealth has been adequately proven.

Counsel for the accountant contended that by virtue of the provisions of The Mental Health Act of June 12, 1951, P. L. 533, 50 PS §1481(3), 1484(a) (f) : "All able-bodied patients of any institution . . . maintained by the Commonwealth shall be given opportunity to participate in gainful occupational activities for purposes of rehabilitation" and that if these activities are without formal compensation, the patient should be awarded a gratuity grant. The cited sections of The Mental Health Act are as follows:

"§1481. Rights of patient

"Every patient in any institution shall have the right. . . .

"(3) To be employed at a useful occupation in so far as the condition of the patient may permit and the institution is able to furnish useful employment to the patient."

"§1484. Employment of patients

"(a) All able-bodied patients of any institution which is wholly or in part maintained by the Commonwealth shall be given opportunity to participate in gainful occupational activities for purposes of rehabilitation of their physical and mental health. These activities may include employment, without formal compensation, in the maintenance of the institution, but in any case under medical selection and supervision . . .

"(f) Certain gratuity grants may be awarded patients who participate in institutional employment, but these shall not be considered as payment for services rendered."

Assuming without deciding that there was sufficient evidence of the number of hours allegedly worked by Thomas and the reasonable value of his services, this

contention of counsel for the accountant is without support in law. This identical argument was presented to the court in Geisler Estate, 76 Pa. Superior Ct. 560, 562. The lower court in an opinion by Mitchell, J., which was affirmed per curiam by our Superior Court, was of the opinion that the argument lacked validity and dismissed it in the following language:

"It is urged as another reason for avoiding payment that this son performed labor which had a value in excess of the cost of maintenance. The testimony as to this is too indefinite and meagre to allow of an estimate of the value of his services, even if it were proper to permit the claim to be set off by the value of these services. There is testimony that it is usual and customary to have the patients confined as this man was to do work if able, and it is reasonable to suppose that Robert Geisler may have been assigned tasks for his physical welfare. It also appears that some payment was made to Geisler for work done by him away from the home. But how can the value of the labor of the son be set off against these claims against the mother's estate? The son was about thirty-five years old when by regular proceedings he became an inmate of the Allegheny County Home, and the mother could have no claim for his services; she could not sue to recover the value of his labor. There must be a mutuality of demand, or this set-off cannot be pleaded. The mother or her estate cannot discharge her own obligation with money belonging to the son. See Hunter, Receiver, v. Henning, 259 Pa. 347. Even if a set-off could be maintained against the Commonwealth it cannot be taken advantage of by a third person."

To the above the following observations may be added. While section 1481 (3) provides that the patient has the right to be employed at a useful occupation, this right is conditioned on the patient's own health and the ability of the institution to furnish useful

employment. While section 1484(a), quoted above, makes it mandatory upon the institution to afford opportunity to the patient to participate in "gainful occupational activities", it is expressly stated that should the activities include "employment", it may be "without formal compensation". "Gainful" means in aid of rehabilitation rather than productive of money or goods. Compensation for the employment is apparently within the discretion of the institution, and counsel for the accountant made no effort to prove that here this discretion has been abused.

So far as the rights of any patient under section 1484(f) are concerned, it would appear that prior to 1951 there was no similar provision in any of the mental health acts of this Commonwealth. It also appears that to date the Commonwealth has never made any so-called "gratuity grants", in this or any other case. The Commonwealth has advanced no reasons for its failure to act under this section. However, it is readily seen that the making of any such grants, though originally just a small leak in the Commonwealth's dike of financial stability, could well open the floodgates of public expenditures so as to overwhelm our taxpaying inhabitants already heavily burdened by the expense of maintaining State mental institutions.

The attorney for the accountant in his brief stresses the order of liability as listed in The Mental Health Act of June 12, 1951, P. L. 533, sec. 701, 50 PS §1361, which is as follows:

"Except as otherwise specifically provided in this act, liability for all costs of care of any patient in any State institution is hereby imposed, in the following order, against—

"(1) The patient's real and personal property;

"(2) The persons liable for the patient's support;*

---

\* Act of June 1, 1915, P. L. 661, sec. 3, as amended, 71 PS §1783.

"(3) The Commonwealth or, in the case of an inebriate, the county or institution district in which he resides."

He cites and relies on Liberty Bank and Trust Co., etc., v. Commonwealth, 85 D. & C. 279, and upon McIlwain Estate, 4 Fiduc. Rep. 200. I have read these two cases but am of the opinion that they do not support counsel's contention. The patient's daughter testified before me that she and her mother were consulted as to their financial ability to support the patient, either wholly or partially. They agreed to pay $10 a month toward his support, alleging that this was the limit of their ability to contribute. In any event the liability of Thomas' wife and children is in the nature of a suretyship insofar as this claim of the Commonwealth is concerned. See Boles' Estate, 316 Pa. 179, and Commonwealth v. Zommick, 362 Pa. 299, holding that the obligation of the patient's relations is a primary liability.

In Geisler's Estate, supra, and in the Estate of Belinda Joyce, O. C. of Philadelphia County, no. 1613 of 1949, in an adjudication by President Judge Sinkler (not reported) the claim of the Commonwealth was upheld. President Judge Sinkler said:

"As an abstract proposition, it may be contended, since recovery against a living person is conditioned upon being financially able to pay, that there is no 'cause of action' against a living person if he is not able to pay, and therefore there is no 'cause of action' which can survive against his estate. The interpretation here followed is that the statute creates a cause of action for maintenance, but that, with respect to a living person, it attaches a condition that the cause of action cannot be enforced unless the person is able to pay. This condition is not applicable to a suit against a decedent's estate. Accordingly, the cause of action may be asserted against the decedent's estate without

regard to its financial ability to pay. This is, of course, a question of construction of the statute, but the Statutory Construction Act of May 28, 1937, P. L. 1019, sec. 52, 46 PS §552, redeclaring recognized rules of interpretation, enjoins the adoption of that interpretation which will favor the public interest over the private interest. *In a conflict of interest between the government units supporting the unfortunate requiring maintenance by use of money of the taxpayers, and the interest of the heirs who stand as volunteers, it is clear that the furtherance of the public interest requires that interpretation which will reduce the burden of the taxpayers and permit recovery by the government units from private sources."* (Italics supplied.)

For the reasons above stated, the claim of the Commonwealth is allowed, and I will make an award as requested by the Commonwealth.

There was no objection to the account which shows a balance of personalty of      $5,912.56 from which deduct additional credit noted on counsel's appearance, administrator's commissions,      364.00

leaving a balance of      $5,548.56

which, composed of cash as indicated in the account, and together with any income received to date of distribution, is awarded to the Commonwealth of Pennsylvania, on account of its claim, as above.

Leave is hereby granted the accountant to execute and deliver all necessary transfers and assignments.

And now, April 7, 1958, the account is confirmed nisi.