PENNHURST STATE SCHOOL, AN INSTRUMENTALITY OF THE COMMONWEALTH OF PENNSYLVANIA, PLAINTIFF-APPELLANT, v. ESTATE OF SAMUEL GOODHARTZ, DEFENDANT-RESPONDENT.

Argued February 3, 1964—Decided May 4, 1964.

*Mr. Ronald Berman* argued the cause for appellant (*Mr. Arthur E. Ballen,* attorney).

*Mr. Martin L. Blatt* argued the cause for respondent (*Mr. Morris Goldsmith,* attorney).

The opinion of the court was delivered by

JACOBS, J. The Atlantic County Court dismissed the plaintiff's complaint, without prejudice. The Appellate Division affirmed and we certified on the plaintiff's application. 40 *N. J.* 510 (1963).

The plaintiff in its complaint alleged that it is an instrumentality of the Commonwealth of Pennsylvania and that Irvin Goodhartz, a mental incompetent, was placed in its care and custody in 1940 and has so continued to date. It further alleged that the decedent Samuel Goodhartz, who died in 1957, was the father of Irvin and that his estate is responsible for the reasonable cost of the maintenance of Irvin. It claimed the sum of $9,532.04 plus interest from 1957. The defendant in its answer denied liability and it joined Esther Goodhartz, the decedent's widow, as a third-party defendant. It then moved for the entry of judgment on the pleadings and its motion was granted because the Pennhurst State School "was not the proper plaintiff" and there had been no hearing "to determine the reasonableness

of the charges made for Irvin's care and maintenance, and the ability of the estate to pay." The County Court did not give any reason why there should not now be a substitution of parties nor did it give any satisfactory statement as to why it should not now hear and determine the issues of reasonableness and ability to pay so far as they may be pertinent.

On the plaintiff's appeal to the Appellate Division that court rejected the grounds advanced by the County Court. It noted that, although under the Pennsylvania statutes the action should have been brought in the name of the Department of Justice of the Commonwealth, rather than in the name of the Pennhurst State School (see *Pa. Stat. Ann.* tit. 71, § 1781 *et seq.*), that could readily have been corrected by amendment. *Cf. In re Carpenter's Estate,* 142 *N. J. Eq.* 772, 776 *(E. & A.* 1948). It also noted that under the Pennsylvania statutes the reasonableness of the charge "could have been established *prima facie* by a department of revenue statement" *(Pa. Stat. Ann., supra,* § 1785) and that, under the holdings in lower court decisions in Pennsylvania, the ability to pay is not a "condition to recovery" where the claim is being asserted, as here, not against a living parent but against the estate of a deceased parent. See *Geisler's Estate,* 76 *Pa. Super.* 560, 562 *(Super. Ct.* 1921); *Giordano Estate,* 14 *Pa. D. & C. 2d* 725 *(Pa. Orphans' Ct.* 1959). While disapproving the reasons stated by the County Court, the Appellate Division concluded that its dismissal of the complaint should be sustained on the ground that, under the Pennsylvania statutes, it was essential that the action be brought in the courts of Pennsylvania rather than in the courts of New Jersey. We find no sound basis for that conclusion.

Section 1781 provides that when a person is maintained as an inmate of any hospital or other institution of the Commonwealth, his property or estate should be liable for such maintenance, to be paid or recovered as thereinafter provided. Section 1783 provides that the "husband, wife, father, mother, child, or children," if "legally able" so to do, shall be liable to pay for the maintenance of the inmate as thereinafter pro-

vided. Section 1784 provides that the court of common pleas of the county where the inmate resides or the institution is operated shall, on application of the Department of Justice, make an order for payment against the guardian of the estate of the inmate or against the husband, wife, father, mother, child or children of the inmate. In *In re Harnish's Estate*, 268 *Pa.* 128, 110 *A.* 761 (*Sup. Ct.* 1920), the decedent died testate leaving an indigent adult son who was an inmate of the Lancaster County hospital for the insane. The Commonwealth never proceeded before the court of common pleas but filed a claim in the orphans' court which was administering the decedent's estate. The claim was allowed and the executors appealed, contending that § 1784 set forth the Commonwealth's exclusive mode of procedure. In rejecting this contention, the Supreme Court of Pennsylvania noted that the statute "imposed a liability upon the father for the support of his son" and that after the father's death the orphans' court where his estate was being administered was a proper forum for enforcement of that liability. Towards the close of its opinion, the court pointed out that the liability existed by virtue of § 1783 and that § 1784 "merely provides a method by which it may be adjudicated." See *In re Stoner's Estate*, 358 *Pa.* 252, 56 *A.* 2d 250 (*Sup. Ct.* 1948).

It is, of course, true that here the father's estate is being administered not in Pennsylvania but in New Jersey and that the holding in *Harnish's Estate* may not be strictly applicable. Nevertheless the holding does indicate that Pennsylvania does not view its statutory right to recover support from the parent's estate as being so intertwined with the specific remedy and procedure set forth in the statute as to preclude other traditional remedies and procedures. See *California ex rel. Houser v. St. Louis Union Trust Co.*, 260 *S. W.* 2d 821, 830–831 (*Mo. App.* 1953), *cert.* dismissed 348 *U. S.* 932, 75 *S. Ct.* 354, 99 *L. Ed.* 731 (1955). The Pennsylvania legislature did not expressly limit enforcement of the right it created to the courts of Pennsylvania and there is no reason why such limitation should be implied. See *Ohio ex rel.*

*Duffy v. Arnett,* 314 *Ky.* 403, 234 *S. W. 2d* 722 (*Ct. App.* 1950); *cf. California v. Copus,* 158 *Tex.* 196, 309 *S. W. 2d* 227, 67 *A. L. R. 2d* 758 (*Sup. Ct.* 1958), cert. denied 356 *U. S.* 967, 78 *S. Ct.* 1006, 2 *L. Ed. 2d* 1074 (1958); but *cf. Pennsylvania v. Carr,* 10 *N. J. Super.* 592 (*Law Div.* 1950). In the *Arnett* case, the State of Ohio, by its attorney general, brought a proceeding in Kentucky to recover money owed to the Ohio Industrial Commission as premiums for workmen's compensation insurance coverage extended to the defendant. In rejecting the contention that the claim could be enforced only in the Ohio courts, the Court of Appeals noted that even if it were viewed as a claim by Ohio for collection of taxes or enforcement of revenue laws, it was nonetheless maintainable in Kentucky (see *Oklahoma ex rel. Oklahoma Tax Comm'n v. Rodgers,* 238 *Mo. App.* 1115, 193 *S. W. 2d* 919 (*Ct. App.* 1946); *Oklahoma ex rel. Oklahoma Tax Comm'n v. Neely,* 225 *Ark.* 230, 282 *S. W. 2d* 150 (*Sup. Ct.* 1955); *City of Detroit v. Gould,* 12 *Ill. 2d* 297, 146 *N. E. 2d* 61 (*Sup. Ct.* 1957); *cf. Standard, &c., Co. v. American Salpa Corp.,* 113 *N. J. Eq.* 468 (*Ch.* 1933); *New York v. Coe Mfg. Co.,* 112 *N. J. L.* 536 (*E. & A.*), cert. denied 293 *U. S.* 576, 55 *S. Ct.* 89, 79 *L. Ed.* 674 (1934)); in the course of its opinion, the Court of Appeals had this to say:

"There is a substantive right created which is independent of the procedure to be used in the Ohio courts. A statutory cause of action which is otherwise transitory should not be construed as local merely because of accompanying procedural provisions intended to be applicable only to the courts of the state creating the cause of action, where the remedy is not an unusual one or one not uncommon to the law of the forum." 234 *S. W. 2d,* at *pp.* 724-725.

Compare *Fresquez v. Farnsworth & Chambers Company,* 238 *F. 2d* 709 (10 *Cir.* 1956) with *Grant v. Pacific Gamble Robinson Co.,* 22 *Wash. 2d* 65, 154 *P. 2d* 301 (*Sup. Ct.* 1944).

█ The remedy afforded by Pennsylvania is neither unusual nor unknown to New Jersey; indeed, our statutes contain comparable provisions which evidence a common policy favoring the imposition of responsibility upon financially able

parents for the maintenance of their indigent incompetent children in State institutions. See *N. J. S. A.* 30:4–66; cf. *R. S.* 44:1–140; *In re Pavlick,* 54 *N. J. Super.* 478 *(Juv. & Dom. Rel. Ct.* 1959).[1] There is no sensible basis for declining to entertain the plaintiff's action in our courts for we have long become accustomed to the enforcement of rights created by foreign states which are neither penal in nature nor offensive to our policy. See *Giardini v. McAdoo,* 93 *N. J. L.* 138 *(E. & A.* 1919); *Masci v. Young,* 109 *N. J. L.* 453 *(E. & A.* 1932), aff'd 289 *U. S.* 253, 53 *S. Ct.* 599, 77 *L. Ed.* 1158 (1933); *Marshall v. Geo. M. Brewster & Son, Inc.,* 37 *N. J.* 176 (1962); cf. *Zurich General Accident, &c., Co. v. Ackerman Bros., Inc.,* 124 *N. J. L.* 187 *(E. & A.* 1940). New Jersey's attitude favoring the extraterritorial enforcement of familial support obligations was evidenced by its adoption in 1952 of the Uniform Reciprocal Enforcement Support Act. *N. J. S.* 2A:4–30.1 *et seq.; Daly v. Daly,* 21 *N. J.* 599, 603 (1956). However, the plaintiff was not limited by that act to a proceeding under it in view of the provision that its remedies shall be "in addition to and not in substitution for any other remedies." *N. J. S.* 2A:4–30.3; *Zelek v. Brosseau,* 47 *N. J. Super.* 521, 533 *(App. Div.* 1957), aff'd 26 *N. J.* 501 (1958); cf. *Worthley v. Worthley,* 44 *Cal.* 2d 465, 472, 283 *P.* 2d 19, 24 *(Sup. Ct.* 1955).

In *Kowalski v. Wojtkowski,* 19 *N. J.* 247, 252–253, 53 *A. L. R.* 2d 556, 561–562 (1955), the Court made passing reference to section 610 of the *Restatement on Conflict of Laws* where the view was expressed that no action may be

---

[1] The defendant seeks to place reliance on *Morris County Welfare Board v. Gilligan,* 130 *N. J. L.* 83 *(E. & A.* 1943). Question may be raised as to whether that case was soundly decided but, in any event, such difference as it may suggest between the respective approaches of Pennsylvania and New Jersey would clearly be insufficient to support the contention that the right created by Pennsylvania's laws should be denied enforcement in our courts as being contrary to the policy of our State. See *Zotta v. Otis Elevator Co.,* 64 *N. J. Super.* 344, 349 *(App. Div.* 1960); cf. *Masci v. Young,* 109 *N. J. L.* 453 *(E. & A.* 1932), aff'd, 289 *U. S.* 253, 53 *S. Ct.* 599, 77 *L. Ed.* 1158 (1933); 3 *Beale, Conflict of Laws,* p. 1651 (1935).

maintained on a right created by the law of a foreign state as a method of furthering its own governmental interests. See also § 458. The breadth of this view was rejected in several cases involving the extraterritorial enforcement of tax claims and brought about a caveat in which the Institute indicated that the allowance of such actions would appear to be desirable. See *Restatement, pp.* 174–175 (1948 *Supp*); *Oklahoma ex rel. Oklahoma Tax Comm'n v. Rodgers, supra*; *Oklahoma ex rel. Oklahoma Tax Comm'n v. Neely, supra*; *City of Detroit v. Gould, supra; Ohio ex rel. Duffy v. Arnett, supra; Ehrenzweig, Conflict of Laws* 174 (1962); *Leflar, Conflict of Laws* 84–85 (1959); Note, 18 *Cornell L. Q.* 581 (1933); *cf. Standard, &c., Co. v. American Salpa Corp., supra; New York v. Coe Mfg. Co., supra.* We accept the reasons advanced in the cited cases in support of the extraterritorial enforcement of tax claims and they would seem to apply, with perhaps even greater force, to such enforcement of familial support obligations. These obligations are compensatory rather than penal and are consistent with local policy; their enforcement entails no procedural or governmental obstacles and advances the interests of comity between the states. As here, they do not involve any incidents of *forum non conveniens* and, if an exceptional situation arises where such incidents are present, the cause may readily be remitted to the more convenient forum. *Cf. Gore v. United States Steel Corp.,* 15 *N. J.* 301, *cert.* denied 348 *U. S.* 861, 75 *S. Ct.* 84, 99 *L. Ed.* 678 (1954); Leflar, "Extrastate Enforcement of Penal and Governmental Claims," 46 *Harv. L. Rev.* 193, 202 (1932).

We are satisfied that the summary dismissal of the plaintiff's complaint was erroneous and that the matter should be tried in regular course in the Atlantic County Court. The parties may there raise any and all issues they deem appropriate with leave to amend their pleadings accordingly. Thus they may seek determination, *inter alia,* of the important constitutional and jurisdictional questions dealt with in *Department of Mental Hygiene v. Kirchner,* 36 *Cal. Rptr.* 488, 388

P. 2d 720 (*Sup. Ct.* 1964), and *California v. Copus, supra.* The *Kirchner* case was reported after argument of this appeal and we intimate no present views as to its holding or as to *Copus.* We do, however, reject the suggestion in the Appellate Division's opinion that because Pennsylvania is a sovereign state the defendant here may not assert a bar of limitations against it. When a foreign state sues in the courts of our State it lays aside its sovereignty and is to be dealt with as a private suitor. See *Western Lunatic Asylum v. Miller,* 29 *W. Va.* 326, 1 *S. E.* 740, 743 (*Sup. Cl. App.* 1887); *cf. Guaranty Trust Co. of New York v. United States,* 304 *U. S.* 126, 133–134, 58 *S. Ct.* 785, 82 *L. Ed.* 1224, 1228–1229 (1938); *Washington Const. Co. v. United States of America,* 75 *N. J. Super.* 536, 539 (*Ch. Div.* 1962). A private litigant who sues in our courts on a foreign statutory right not conditioned by a limitation in its terms, is subject to any applicable provisions in our statutes of limitation. See *Marshall v. Geo. M. Brewster & Son, Inc., supra.* Although the case may be distinguishable and the issue of sovereignty may not have been dealt with, this Court recently held in *Kentucky Dept. of Mental Health v. Mullins,* 31 *N. J.* 598 (1960), affirming 56 *N. J. Super.* 449 (*App. Div.* 1959), that New Jersey's six-year limitation would be applied to a claim by Kentucky for its maintenance of the defendant's divorced wife in a Kentucky mental hospital.

Reversed and remanded for trial.

FRANCIS, J., concurring in result.

*For reversal and remandment*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For affirmance*—None.