107 N.J. Super. 223 (1969)
258 A.2d 20
JOSEPH V. TERENZIO, AS COMMISSIONER OF HOSPITALS OF THE CITY OF NEW YORK, PLAINTIFF-APPELLANT,
v.
HARVEY NELSON, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 29, 1969.
Decided October 17, 1969.
*224 Before Judges KILKENNY, LABRECQUE and LEONARD.
Mr. Samuel A. Bloom argued the cause for appellant (Messrs. Harry Silverstein and Samuel A. Bloom, attorneys).
Respondent did not file a brief or appear.
The opinion of the court was delivered by KILKENNY, P.J.A.D.
Plaintiff Commissioner of Hospitals of the City of New York sued defendant in 1967 in our Law Division to recover the sum of $4338, with interest thereon from May 8, 1963. He claimed entitlement thereto and the right to sue therefor under sections 101 and 104 of the Social Welfare Law, McKinney's Consol. Laws, c. 55, of the State of New York. There were cross-motions by the parties for summary judgment. The Law Division granted defendant's motion and denied plaintiff's. Plaintiff timely appeals from the resulting judgment of November 4, 1968 in favor of defendant.
The parties agreed in the trial court that the facts essential to the determination of the motions were undisputed. They are as follows.
Bessie Nelson, a widow and mother of defendant, the latter being a New Jersey domiciliary, was a patient at three hospitals in the City of New York in 1962 and 1963, at all times as a nonpaying patient. She was in New York Hospital from September 1 to December 16, 1962; in Lenox Hill Hospital from January 29 to March 12, 1963, and in Bellevue Hospital from March 12 to May 8, 1963. New York Hospital and Lenox Hill Hospital were during the periods in issue voluntary nonprofit hospitals. Bellevue Hospital was a hospital maintained by the Department of Hospitals of the City of New York. She is now deceased.
*225 The sum sued for was made up as follows:

Balance paid to New York Hospital by the City of New York $1,482
Paid to Lenox Hill Hospital by the City of New York 1,260
Due for hospitalization while at Bellevue Hospital 1,596
 Total $4,338

Bessie Nelson had two other children, namely, Bernard Nelson and Cynthia Picket, residents and citizens of the State of New York. At the time of the pretrial herein, another action in the Civil Court of the City of New York was pending against these two other children. The record before us does not disclose the outcome of that action.
Section 101 of the New York Social Welfare Law, as it existed at the time in issue, established a "Liability of relatives to support," as follows:
1. The husband, wife, father, mother or child of a recipient of public assistance or care or of a person liable to become in need thereof shall, if of sufficient ability, be responsible for the support of such person. Step-parents shall in like manner be responsible for the support of minor step-children.
Defendant was not a minor child at the time in issue, so that we need not concern ourselves with the qualified exception in section 101 applicable to a minor child.
Paragraph 3 of section 101 provides that the liability imposed by this section shall be for the benefit of the public welfare district concerned or any legally incorporated nonprofit institution which receives payments from any governmental agency for the care of medically indigent persons, "and such liability may be enforced by appropriate proceedings in a court of competent jurisdiction."
Section 104 sets forth that a "public welfare official may bring an action or proceeding against a person discovered to have real or personal property * * * if such person, or any one for whose support he is or was liable, received assistance and care during the preceding ten years, and shall be entitled to recover up to the value of such property the cost of such *226 assistance or care. Any public assistance or care received by such person shall constitute an implied contract. * * *." (Emphasis added). This section also notes that the claim asserted by a public welfare official shall not be impaired, impeded or defeated, "in whole or in part, on the grounds that another person or persons may also have been liable to contribute." In all such claims, "the public welfare official shall be deemed a preferred creditor." (Emphasis added).
The Law Division decided that the pertinent New York Social Welfare Law, upon the basis of which recovery was sought, was "penal" in nature and had been so interpreted in two New York decisions, viz., Trussell v. Kostiw, 35 Misc.2d 60, 229 N.Y.S.2d 263, 265 (Spec. T. 1962), and West v. Charles, 46 Misc. 2d 200, 259 N.Y.S.2d 493, 495 (Family Ct. 1965). Based solely on that reason and the general rule that our State will not enforce the penal laws of another state, summary judgment was granted in favor of defendant. Reliance was placed upon New York v. Coe Mfg. Co., 112 N.J.L. 536, 537 (E. & A. 1934), in which our then highest court observed that "penalties imposed by the penal laws of a state cannot be enforced in another jurisdiction," citing the Antelope, 10 Wheat. 66, 6 L.Ed. 268, in which Chief Justice Marshall said, "the courts of no country execute the penal laws of another."
In Trussell v. Kostiw, supra, the New York trial court's use of the word "penal in nature," in referring to section 101 of the Social Welfare Law, was considered in the light of the special facts of that case. There it was sought to recoup from the assets of a deceased wife's estate the cost of her husband's hospitalization in a city-owned hospital. But the husband had abandoned his wife and son in 1951, such abandonment continuing to the date of her death in 1961, and the husband had been guilty of misconduct (adultery) during that period. The trial court noted the statute was "silent as to the obligations of the wife and next of kin when the husband abandons her or is guilty of misconduct." In referring to a statute of this kind as "penal in nature" *227 the court did so only to reach its conclusion that the statute must be "literally construed." On that rule of statutory construction it decided that the duty imposed upon the wife by section 101 was "absolute in the absence of exculpatory words of exemption" (229 N.Y.S.2d, at 265). Accordingly, the New York court held the wife's estate liable, observing that "Until the marriage relationship is terminated by divorce or annulment, the burden is cast on the wife regardless of the fault of either spouse" (at 265). The son was also held personally liable in Trussell under sections 101 and 104, as then existing, for the same reason and despite his father's abandonment.
In West v. Charles, supra, the court stated that statutes imposing responsibility upon certain relatives to contribute to the support of indigent relatives "are penal in nature and must be literally construed," citing Trussell v. Kostiw, supra (emphasis added). The issue in West v. Charles was whether a son could be required under section 101 of New York Welfare Law to pay for his father's "funeral expenses." Construing section 101 "literally," the court held that this section's provision requiring the son of a recipient of public assistance to contribute to his father's "support" could not be construed to include the father's "future funeral expenses." 259 N.Y.S.2d, at 495.
Reference by a trial court of another state in its opinion to one of its statutes as "penal in nature" for the purpose of determining whether the law shall be "literally" construed does not make the characterization binding upon our State if, in fact and substance, the statute is not a penal law. As the old truisms express it: "A rose by any other name is still a rose" and "Calling a dog's tail a leg will not give the dog five legs." A name or label attached to something will not per se change the essential nature of the object.
In New York v. Coe Mfg. Co., supra, our Court of Errors and Appeals noted the basic rule that "penal laws, strictly and properly, are those imposing punishment for an offense *228 committed against the State." 112 N.J.L., at 538. In that case a New York statute imposed a franchise tax for the privilege of conducting business in that state by a foreign corporation. The tax was to be paid annually and an action could be brought against a foreign corporation for failure to comply with the statute, and for the recovery of the tax, penalties and interest. Suit was brought by the State of New York in our former New Jersey Supreme Court against a New Jersey corporation to recover the franchise tax due it, together with the "penalties" and interest for nonpayment. Our then highest court held that the New York statute was not a "penal" one, regardless of the "penalty" provision therein. It allowed recovery by New York in our courts, despite the general principal referred to above that courts of one state will not enforce the "penal" laws of another state.
In Pennhurst State School v. Estate of Goodhartz, 42 N.J. 266 (1964), our present Supreme Court held that the Pennsylvania statute, comparable to that in New York, requiring specified relatives, if "legally able" so to do, to pay for the maintenance of an inmate of any hospital or other institution of the Commonwealth, did not require that action be brought in the courts of Pennsylvania rather than in the courts of New Jersey, where the estate of a relative made liable by the statute was being administered. Justice Jacobs, speaking for a unanimous court, observed that the remedy afforded to Pennsylvania was neither unusual or unknown in New Jersey, our statutes containing comparable provisions "which evidence a common policy favoring the imposition of responsibility upon financially able parents for the maintenance of their indigent incompetent children in State institutions" (at 270). The same rationale applies to the statutory obligation of financially able children to pay for the hospitalization at the public expense of an indigent parent.
Justice Jacobs also noted: "There is no sensible basis for declining to entertain the plaintiff's action in our courts *229 for we have long become accustomed to the enforcement of rights created by foreign states which are neither penal in nature nor offensive to our policy" (at 271). New Jersey's attitude was deemed to be one of "favoring the extra-territorial enforcement of familial support obligations" (at 271). And further, "These obligations are compensatory rather than penal and are consistent with local policy; * * *." (at 272; emphasis added).
The trial court acknowledged its familiarity with the Pennhurst State School decision. However, it sought to distinguish it from the instant case on the ground that the Pennsylvania statute in that case had not been declared to be penal in nature by any court, whereas the comparable New York statute had been referred to in the above-mentioned two New York cases, in opinions by the trial courts, as "penal in nature." But, as we observed above, the invocation of "literal" construction which motivated the characterization was due to the special facts of those cases. No such reason exists under the facts herein for any such label to be attached to enforcement of the statutorily created "familial support obligation" against defendant son to pay for his indigent mother's hospital care in the New York hospitals.
Section 101 of the New York Social Welfare Law merely seeks to recoup costs incurred in caring for an indigent only if the specified relative is financially able to pay. The obligation is referred to in section 104 as constituting "an implied contract." The welfare official is to be regarded as a "preferred creditor." He is authorized to bring an action to recover against a person "discovered to have real or personal property" who is liable to pay. Penal sanctions, such as fines or jail confinement, are not provided. These New York statutory sections provide simply a means of receiving compensation for the public benefit for costs incurred, thereby enabling the public welfare officials to render further public benefactions to the needy. Such a statutory obligation and the remedy for collection from the property of *230 the one made liable are not "penal," as that word is correctly interpreted.
We note in passing that a 1966 amendment to section 101, L. 1966, c. 256, effective April 30, 1966, diminishes to some extent the list of relatives made liable for support. But the amendment was held to have no retroactive applicability and did not nullify a claim for services rendered prior to its adoption. Yerby v. Greenberg, 52 Misc.2d 835, 277 N.Y.S.2d 54 (N.Y.C. Civ. Ct. 1967).
The judgment under review is reversed. The matter is remanded to the Law Division for the entry of an appropriate judgment in favor of plaintiff and against defendant for the sum due, credit, if any, to be given for any amounts received from decedent's other children by virtue of the New York action.