MEMORANDUM OF DECISION ON PLAINTIFF’S MOTION FOR SUMMARY JUDGMENT (Pleading No. 130)
GUERNSEY, C.J.
In the instant action the Plaintiff Mohegan Tribe of Indians of Connecticut, pursuant to MTC § 7-281 (a), seeks to recover damages for underpaid sales taxes, together with interest and penalties, that it claims resulted from “improper deductions claimed by [Big Bubba’s BBQ, LLC] as Sales Adjustments and Sales Deductions for Discounts, Player’s Club points and Other Adjustments” [1] from reported gross sales. The initial basis of Plaintiffs instant motion for summary judgment, as set forth in the affidavit of Terence Ryan, Tax and Compliance Manager,[2] was that the Defendant never filed a protest of the Plaintiffs assessment of underpaid sales taxes as required by MTC § 7—230(b), and that by failing “to pursue the only avenue for challenging the assessment and calculation of the tax, Defendant cannot now challenge the imposition of the tax and cannot challenge the calculation of the tax.”[3]
I
BACKGROUND
On or about March 30, 2001, the Mohegan Tribal Gaming Authority, as Landlord, entered into a lease with Big Bubba’s BBQ, LLC, as Tenant, for certain retail space within an area designated as “Retail Facilities” to be located in the contemplated expansion of Mohegan Sun Casino. Section 4.3 of the lease, dealing with “Percentage Rent,” specified some of the records and information that must be preserved by Tenant for at least three years, and gave the Landlord the right to examine and audit these books and records. “Gross Sales” as defined in Section 4.4, do not include “the amounts of any ‘discounts’ actually realized by Landlord pursuant to Section 23.20[4] hereof.” The “Customer Incentive Program” referred to requires Tenant to accept as a form of payment “customer cards” issued by the casino operator to its patrons. For “food items” Landlord reimburses Tenant 90% of the gross amount for which the cards are used (75% for all other items, including alcoholic and non-alcoholic beverages).
As relates to the imposition of taxes under Article V the Mohegan Tribe Code, the Mohegan Tribal Tax Code, MTC 7-226(a) imposes a “meals tax” at the rate of 6.35%[5] on all “cash sales of meals sold in any location on the reservation.” Of significance to this case is the definition of “cash sale”:
Cash sales shall not include any complimentary transaction of goods and services through the use of coupons, Player’s Club point charges or similar credit systems.
MTC § 7-225.
By Letter dated March 21, 2011 from Don Sikorski, Manager of the Shops at *407 Mohegan Sun, notice was given to Anthony Mazzola for Big Bubba’s BBQ that the right of audit set forth in Section 4.3 was being exercised. A memorandum to Gary Epstein, CPA and Anthony Mazzola, General Partner, contained a listing of documents and information required for the audit.[6]
The apparent result of this audit was an assessment contained in a letter dated February 15, 2012 from Terence M. Ryan, CPA, in his capacity of Tax and Compliance Manager for the Mohegan Tribe, to Anthony Mazzola, Managing Partner, Big Bubba’s BBQ, LLC, concerning “Mohegan Sales Tax Examination Changes” and accompanied by an Audit Billing Notice. This asserted that underpaid Sales Taxes totaled $302,970.00 which, along with related penalty assessments and interest resulted in a total indebtedness to the Mohegan Tribe in the amount of $583,248.00. Payment was demanded by March 31, 2012, and a date of March 15, 2012 was given for the filing of a petition with the Tax and Compliance Office to schedule a hearing if there was disagreement with the assessment.
In response, Big Bubba’s, through its attorney, Karl-Erik Sternlof, commencing February 23, 2012 exchanged correspondence with Mohegan Sun Vice President and General Counsel Marcia Seligman and her replacement Kimberly S. Doubleday, and was provided with spreadsheets showing adjustments to taxable sales ranging firm $621,640, $591,650 and $491,269 for 2009, 2010 and 2011. Not all of the documents referenced in this series of letters have been presented to the Court.[7]
Significantly, for purposes of this motion, on March 15, 2012 Attorney Sternlof sent two letters; one, via mail and e-mail, was sent to the Mohegan Tribe’s Attorney General Helga Woods, with copies via email to Terence Ryan and Kimberly S. Doubleday. The content of this letter is as follows:
March 15, 2012
Re: Big Bubba’s BBQ, LLC Formal Petition for a Hearing Before the Mohegan Tax Office Pursuant to Section 7-229 and 7-230 of the Mohegan Code of Laws
Dear Helga:
Pursuant to the above-cited sections of the Mohegan Code of Law, this letter constitutes a formal request for a hearing to reconsider the tax assessment levied February 15, 2012 against my client, Big Bubba’s BBQ, LLC.
Very truly yours, BrownJaeobson P.C. Karl-Erik Sternlof
cc: Terence Ryan (via email) Kimberly S. Doubleday (via email)
The other letter, sent to Kimberly S. Doubleday,[8] points out (correctly) that neither MTC § 7-229 nor § 7-230 establish a thirty day period for filing a formal petition *408 with the Tax & Compliance Office. With respect to such a petition, it goes on to assert:
As Section 7~230(e) of the Tribal Code requires payment under protest as a condition to “making any protest to a tax assessment”, my client ultimately cannot pursue an appeal as my client cannot possibly pay this enormous assessment. Your tax office has my client’s financials so there should be no doubt on that score.
Receipt of the letter designated “Formal Petition for a Hearing Before Mohegan Tax Office” was acknowledged by Attorney General Woods by letter dated March 29, 2012. In this letter the Attorney General stated that she was advised by Terence Ryan that Big Bubba’s was unwilling or unable to pay the tax assessment levied February 15, 2012, and that Attorney Sternlof had requested an informal meeting to review the tax assessment and calculation of sales taxes. Based on Exhibit 9 to the Affidavit of Gary Epstein, it would appear that this meeting took place May 18, 2012 with representatives of Mohegan Sun, the Tax Office, Tribal Corporate Governance, Gary Epstein and one other person representing Big Bubba’s in attendance. This exhibit, a letter from Terence Ryan to Anthony Mazzola dated June 21, 2012, entitled “Mohegan Tribe Sales Tax Examination—FOR SETTLEMENT PURPOSES ONLY” (emphasis in original), in addition to discussing Big Bubba’s request for a waiver of sales taxes prior to January 1,2010, stated the following:
Big Bubba’s has not produced any information to dispute the calculation of Sales Tax payable to the Mohegan Tribe or the conclusion that an underpayment of Sales Tax had occurred. Therefore, this office confirms that the underpaid Sales Tax to the Mohegan Tribe is $302,970.00.
The letter went on to offer, for settlement purposes, a waiver of interest and penalties as permitted by MTC § 7-229(i). In response, by letter dated July 26, 2012 Attorney Sternlof set forth Big Bubba’s arguments concerning the alleged use of “three separate methods for the calculation of sales tax,”[9] and proposed a resolution that would result in a substantially lower payment. The instant litigation establishes that no settlement was reached.
II
ANALYSIS
“Summary judgment is appropriate when the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.” Scanlon v. City of West Hartford, 1992 WL 33721 (Conn.Super., 1992).
Pursuant to Connecticut Practice Book § 17-49, Summary Judgment can be granted if the pleadings, affidavits and other documentary proof, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.
Connecticut Practice Book § 17-49; Bartha v. Waterbury House Wrecking Co., Inc., 190 Conn. 8, 11 [459 A.2d 115] (1983), Marceau v. Norwich, 46 Conn.Supp. 197, 200 [746 A.2d 836] (1999). In passing on a Motion for Summary Judgment, the trial court is to determine whether an issue of fact exists, but may not try that issue if it does exist. Dora *409 zio v. M.D. [M.B.] Foster Electric Co., 157 Conn. 226, 228 [258 A.2d 22] (1968).
Wallace v. Mohegan Tribal Gaming Authority, 2 G.D.R. 51, 5 Am. Tribal Law 295 (2004). As to the burden on the moving party, this Court has followed the holding of the Connecticut Appellate Court:
“[T]he burden of showing the nonexistence of any material fact is on the party seeking summary judgment.... It is not enough for the moving party merely to assert the absence of any disputed factual issue; the moving party is required to bring forward ... evidentiary facts, or substantial evidence outside the pleadings to show the absence of any material dispute.” (Emphasis in original; citation omitted; internal quotation marks omitted.) Doty v. Shawmut Bank, 58 Conn.App. 427, 430, 755 A.2d 219 (2000).
Gargano v. Mohegan Tribal Gaming Authority, 5 G.D.R, 68, 11 Am. Tribal Law 119 (2013), quoting Barasso v. Rear Still Hill Road, LLC, 81 Conn.App, 798, 803, 842 A.2d 1134 (2004).
As for Plaintiffs initial argument, that Defendant never filed a protest of the tax assessment, the affidavit of Gary Epstein, and particularly Exhibit 7 attached thereto, if accepted by the Court,[10] would clearly demonstrate that not to be the case. No particular form of petition is required by MTC § 7-230, and a letter to the Attorney General with copies to the Tax & Complianee Manager and Mohegan Sun Acting Vice President/General Counsel, in the absence of Tax Office rules to the contrary, should certainly suffice.[11]
With respect to the subject of payment of the taxes under protest, required by MTC § 7-230(e), and the waiver thereof allowed “for good cause” under MTC § 7-230(h), the Ryan affidavit asserts that “[a]t no time did Big Bubba’s request a waiver from the obligation to pay the Taxes Owed pending a review of a protest,” whereas the Epstein affidavit asserts “Big Bubba’s BBQ, LLC did request a waiver from the obligation to pay the Taxes pending a review of a protest. The request was refused by the Plaintiff.” Based on the affidavits submitted, a genuine issue of material fact is certainly presented.
An examination of the Exhibits to the Epstein affidavit, however, supports the argument of Plaintiffs counsel, that the word “waiver” was not specifically used by Attorney Sternlof in his March 15, 2012 letter petitioning for a hearing or the in letter of said date to Attorney Doubleday. Whether Attorney Sternlof s repeated insistence on his client’s inability to pay constituted an implied request for the waiver of payment under protest that can be requested under MTC § 7—230(h)[12] is a difficult issue, not readily susceptible to determination in the context of a motion for summary judgment. Furthermore, the *410 correspondence between the parties clearly shows that there was much discussion between them; whether a request was made orally, or whether Defendant was simply unaware that such a request could have been made (and was never enlightened by the Plaintiff) cannot and should not be determined in the context of this motion.
With respect to the meeting oí May 18, 2012, the Court is similarly unable to make a determination that there exists no genuine issue of material fact as to whether it constituted a withdrawal of the “Formal Petition for a Hearing” filed by Attorney Sternlof on March 15, 2012. It is certainly possible to infer that the meeting was an attempt to provide the Defendant with an opportunity for an informal resolution of the underpayment issues without the payment under protest that the Defendant could not afford. It is also possible that all parties regarded it as a resolution of the March 15, 2012 “Formal Petition for a Hearing” and therefore a determination from which an appeal could be taken, although neither party has alluded to the existence of a record upon which the Gaming Disputes Court could conduct the review contemplated by MTC § 7-230(d). Finally, if the Petition were defective for failure to pay the full amount of the tax under protest (or to give notice of the grounds and reasons for such protest) as required by MTC § 7-230(e), there is no evidence that it was so acted upon by the Tax Office (unless the determination following the May 18, 2012 meeting served that purpose). As Plaintiffs counsel accurately observed at oral argument, this is uncharted territory.
In any event, in ruling on a motion for summary judgment, “the trial court is to determine whether an issue of fact exists, but may not try that issue if it does exist.” Wallace v. Mohegan Tribal Gaming Authority, supra.
Plaintiff’s Motion for Summary Judgment is denied without prejudice.

. Exhibit 3 to Affidavit of Gary Epstein (Letter from Terence Ryan, Tribal Tax and Compliance Manager to Anthony Mazzola dated February 15, 2012).

. Affidavit of Terence Ryan, March 21, 2014, Paragraph 10: “At no time did Big Bubba’s file a protest with the Tax Office to contest the Taxes Owed.”

. Plaintiff’s Motion for Summary Judgment, March 25, 2014.

. Actually, Section 23,19.

. Prior to July 1, 2011 the rate was 6.00%.

. These documents are contained in Exhibit 32 to Affidavit of Gary Epstein. The following discussion is taken in large part from Exhibits to the Affidavit of Gary Epstein and should not be taken as findings of fact. Rather, the significance is in determining whether there exists one or more genuine issues of material fact for purposes of Plaintiffs Motion for Summary' Judgment.

. In particular, Exhibit 5 references a letter dated October 12, 2010 that purportedly contained a "detailed summary of findings regarding die sales tax examination and the underreported tax amounts over a six-month period in 2010. This letter also informed your client of the exact nature of the underre-porting

.There is no indication that it was, in addition to being mailed, also sent by e-mail or facsimile.

. It should be emphasized that no finding is made with respect to whether or not this was xa fact the case.

. The Court notes that at oral argument the filing of this document was not contested.

. In response to the Court's inquiry at oral argument, Plaintiffs counsel indicated he was not aware of any such rules.

. Unlike § 7-239(i), which allows the Tax Office to waive or cancel interest or penalties for underpayment if it was "the result of circumstances beyond the control of the retailer,” but provides that "inability to pay shall not be considered a circumstance beyond the control of the retailer, § 7-230(e) only requires “good cause” for a waiver of payment under protest and does exclude inability to pay from consideration. It is not unreasonable to assume, given that the assessment called for the payment of over one half million dollars within a period of less than two months for taxes accruing years earlier, that the Tax Office might have found good cause and proceeded to conduct the hearing “as soon as practicable” as contemplated by MTC § 7-230(e).